329 So.2d 52 (1976)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
Billy Linn TALLEY et al.
No. 48561.
Supreme Court of Mississippi.
March 30, 1976.
Sharp & Fisher, Corinth, for appellant.
*53 Smith, Downs, Coleman & Ross, Price & Krohn, Joe B. Mitchell, Corinth, for appellees.
Before INZER, SUGG and WALKER, JJ.
WALKER, Justice, for the Court:
This is an appeal from the Chancery Court of Alcorn County, Mississippi, which found for individual complainants in four suits combined for trial, and which involved Mississippi's uninsured motorist statutes. We affirm.
A summary of the pertinent facts shows that a collision occurred in Alcorn County, Mississippi, on September 14, 1968, between an automobile operated by Flora Mae Humes and an automobile operated by William Carroll Mills. Julian W. McLeod, Billy Linn Talley, and Eddie M. Talley were passengers in the Mills' vehicle at the time of the collision.
The Mills' vehicle was covered by a policy of insurance including, inter alia, liability coverage and uninsured motorist coverage written by State Farm, and the Humes' vehicle was covered at the time of the collision by a liability policy written by Wabash Fire & Casualty Insurance Company.
On November 20, 1969, separate suits were instituted by McLeod, Billy Linn Talley and Eddie M. Talley against Mills (the guests' driver) and Humes. All causes were brought in the Circuit Court of Alcorn County.
Wabash undertook the defense of Humes under the liability provisions of its policy.
After filing a motion to quash process and a separate answer to the declarations, the attorney engaged by Wabash to defend Humes was permitted by the court to withdraw from the case. Wabash did not furnish additional counsel for Humes. Default judgments on writs of inquiry were entered by the Circuit Court of Alcorn County on February 4, 1971, against Flora Mae Humes in favor of Mills ($20,000.00); on May 12, 1971, for McLeod ($8,500.00); on May 13, 1971, for Billy Linn Talley ($13,887.81) and Eddie M. Talley for ($7,000.00).
In June and July, 1971, McLeod, Billy Linn Talley and Eddie M. Talley instituted suits in the Chancery Court of Alcorn County respectively against the uninsured motorist carrier of their family owned vehicles, (State Farm for McLeod and Employers Fire Insurance Company for the Talleys). Mills subsequently transferred his cause to the chancery court under similar allegations and all four cases were consolidated for trial.
The chancellor found, as matters of fact on a trial de novo, that each appellee sustained extensive and serious injuries exceeding $10,000.00 as a result of the accident; that Wabash by its actions did effectively deny coverage; that Wabash did not properly defend the suit; and, that Flora Mae Humes was an uninsured motorist within the meaning of Mississippi Code 1942 Annotated section 8285-52 (1956). A decree was entered in favor of appellees.
On motion to this Court, Employers was dismissed and a partial satisfaction was entered upon payment to the Talleys of the full amount of the judgment entered against Employers.
The only issue raised on this appeal is whether Flora Mae Humes was an uninsured motorist within the meaning of Mississippi's uninsured motorist statute or the provisions of the contract of insurance issued by State Farm.
Mississippi Code 1942 Annotated section 8285-52 defines an uninsured motorist vehicle as a motor vehicle "... as to which... (2) there is such insurance in existence but the insurance company writing the same has legally denied coverage thereunder,..."
*54 However, the provision of State Farm's policy which defines an uninsured automobile omits the word "legally" and states as follows:
Uninsured Automobile  means:
(1) A land motor vehicle with respect to the ownership, ... or use of which there is ... no bodily injury liability bond or insurance policy applicable at the time of the accident ... or there is such applicable bond or insurance policy, but the company writing the same denies that there is any coverage thereunder... ." (Emphasis added).
The appellant has addressed itself in its brief to what is meant by the statutory wording "... . but the insurance company writing the same has legally denied coverage... ." (Emphasis added).
However, if there is any distinction between the statutory wording "has legally denied coverage" and the provision of the policy which reads "... but the company writing the same denies that there is any coverage thereunder," it is not necessary that we address ourselves to that point since the language of the policy does not violate minimum requirements.
In Talbot v. State Farm Mutual Automobile Insurance Company, 291 So.2d 699, 701 (Miss. 1974), this Court said:

The statute requires the uninsured motorist coverage "to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury... . from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law. ..." Miss. Code Ann. § 83-11-101 (1972). There is no requirement that the coverage shall be more than the minimum thus stated. As to any policy which grants the coverage required by the aforesaid Act, any "excess or additional coverage shall not be subject to the provisions of this article." Miss. Code Ann. § 83-11-111 (1972). The coverage Insured contends for in this case is excess or additional to that required by the statute and by the express terms of the statute is not subject to its provisions. It follows that the parties to this suit were free to contract as to uninsured motorist coverage in any respect so long as the required coverage is not cut down by the policy provisions. See Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So.2d 456 (Miss. 1971). If State Farm and Insured could contract free of statutory restraint as to excess coverage, they could also contract to limit the coverage to that required by statute. (Emphasis added).
The provision of State Farm's policy with respect to what constitutes an uninsured automobile does not diminish the coverage required by statute. Therefore, we need only to look to the terms of the contract of insurance to determine whether Flora Mae Humes was an uninsured motorist.
As stated earlier, the complainants' policies with State Farm defined an uninsured automobile as "... or there is such applicable ... insurance policy, but the company writing the same denies that there is any coverage thereunder... ." (Emphasis added).
This narrows the question to be decided to whether the withdrawal of the attorney representing Flora Mae Humes from the case, and Wabash's failure to provide Humes with further representation as it was required to do under the policy, constituted a denial by Wabash that there was any coverage under its policy with Flora Mae Humes.
We are of the opinion that it did.
In A. Widiss, A Guide to Uninsured Motorist Coverage, section 2.32 (1969), the *55 author discusses the history and scope of uninsured motorist coverage:
The first version of the uninsured motorist endorsement provided that the term "uninsured automobile" meant an automobile with respect to the ownership, maintenance, or use of which "there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile." ... Under the terms of the typical automobile liability insurance policy, there are several reasons why a company may have a justifiable basis for denying liability to one of its insureds, following an accident. As a consequence, it is quite possible for a situation to arise where a tortfeasor has insurance in existence at the time of the accident, but where his company thereafter denies coverage so that the tortfeasor is in effect financially irresponsible with respect to claims against him following such an accident. In this situation, if the uninsured motorist endorsement is construed literally, no coverage exists. There have been numerous litigations over whether, in such a case, this literal construction controls, or whether the endorsement is rather to be construed so as to provide coverage.
When the issue was first raised  in the New York courts  it was held that even though an offending driver's coverage was unavailable because his insurer denied liability following the accident, the fact remains that the automobile was insured at the time of the accident, and that therefore there was no question that under the endorsement terms the coverage was not applicable. However, the impact of a denial of liability by the tortfeasor's insurer is obviously the same in its effect upon the injured parties as the complete absence of insurance would be. By 1963 several states had adopted statutory provisions requiring that the uninsured motorist endorsement must provide indemnification in instances involving a denial of coverage by an offending motorist's liability carrier. That same year, when the second revision of the standard endorsement was issued by the joint committee, a phrase was added to the definition of an uninsured automobile:
An automobile ... with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of accident, but the company writing the same denies coverage thereunder. (Emphasis added). [This is identical to the provision in State Farm's policy covering the Talleys].
This addition eliminated the problem in its initial guise, but created several new questions with respect to the character of the relationship between the tortfeasor and his insurer.

Validity of the Disclaimer. For example, uninsured motorist underwriters have argued that the uninsured motorist coverage ought not apply in given cases because the disclaimer of coverage by the tortfeasor's insurance company "was false and was tendered in bad faith." In general, courts have held that the denial of coverage by the tortfeasor's insurer is sufficient in and of itself to give rise to coverage  that is, the insured claiming under the uninsured motorist coverage does not have the burden of establishing that the denial is bona fide. Similarly, in one case, the appearance of an insurance company on behalf of a tortfeasor, under a full reservation of rights, was held not to alter the status of the motor vehicle as uninsured  where the insurer asserted a conditional defense which it withdrew "upon the failure of the tortfeasor to appear at trial." It should be remembered that if the tort-feasor's insurance company does not have a justifiable basis for disclaiming liability, *56 the insurance company which pays a claim to its insured under the uninsured motorist coverage may subsequently successfully assert its right of subrogation against the company that has denied liability. (Emphasis added).
Failure of an insurer to defend a suit against its insured constitutes a denial of coverage in the most meaningful sense. In North River Insurance Co. v. Gibson, 244 S.C. 393, 397, 137 S.E.2d 264, 266 (1964), the Supreme Court of South Carolina quoted with approval State Farm Mutual Automobile Insurance Co. v. Brower, 204 Va. 887, 134 S.E.2d 277 (1964), where the Supreme Court of Virginia, when construing a provision of a policy similar to the one now before us, said:
"There is no apparent reason why the words in the phrase `denies coverage' should not be given their natural and commonly understood meaning in the context in which they are used.
......
"An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give. Here National has failed to give Mazza protection against the damages he has `become legally obligated to pay' which National specifically promised to pay for him. Its failure to appear, to defend and to pay was a denial of coverage within the meaning of § 38.1-381 (c) (ii), and Mazza's car was therefore `an uninsured motor vehicle.'"
In this case, when Wabash failed to provide additional counsel for Flora Mae Humes after initial counsel withdrew, the company's actions spoke louder than words and constituted an effective and complete denial of coverage under its policy with Flora Mae Humes or that they owed her any duty whatsoever. This was sufficient to bring her within the definition of an uninsured motorist under the terms of State Farm's policy with the complainants, which defined an uninsured automobile as being one on which there is an insurance policy, "but the company writing the same denies that there is any coverage thereunder... ." (Emphasis added).
It is not necessary that we discuss whether Wabash was insolvent since the appellant has strongly argued throughout that Wabash was not insolvent, and the appellees conceded during oral arguments that there was no proof that Wabash was insolvent. Suffice it to say that our examination of the record does not reveal that Wabash was insolvent at the time of the accident nor within twelve months thereafter nor was it insolvent at the time of trial.
The judgment of the lower court on direct appeal is affirmed.

ON CROSS-APPEAL
On cross-appeal, it is only necessary that we point out that the chancellor erred in not allowing interest on the judgment from the date of the entry of the decree. Miss. Code Ann. § 75-17-7 (1972).
AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL DECREE IS MODIFIED TO INCLUDE INTEREST FROM DATE OF ENTRY.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, BROOM and LEE, JJ., concur.