Edward Fox, Appellant, v Atlantic Mutual Insurance Company, Sued Herein as Atlantic Companies, Respondent.

Second Department, November 23, 1987

---

**APPEARANCES OF COUNSEL**

*John P. FitzMaurice, P. C.,* for appellant.

**OPINION OF THE COURT**

EIBER, J.

The parties to this action are in controversy over whether the defendant insurance carrier is liable to the plaintiff for the payment of any sums pursuant to the uninsured motorist provisions of an automobile insurance policy. Employing the summary procedure set forth in CPLR 3222, the parties have filed with the court a statement of those facts upon which the resolution of the controversy depends.

According to the parties' statement of facts, the plaintiff Edward Fox was seriously injured on January 12, 1982, while operating a motor vehicle in the course of his employment. The vehicle in question was owned by the plaintiff's employer, Utica Mutual Insurance Company. As a result of the accident, the plaintiff sustained injuries which were stipulated to be "serious * * * within the meaning of the Insurance Law [and] which * * * would entitle the plaintiff to a tort recovery in excess of $20,000".

In effect at the time of the accident was a policy of insurance issued by the defendant, the Atlantic Mutual Insurance Company, which provided for uninsured motorist coverage and hit and run coverage with a liability limitation of $20,000. Although the statement filed with the court pursuant to CPLR 3222 does not specify whether the accident in question involved another vehicle, the plaintiff, in his appellate brief, has indicated that the accident was of the "hit and run" variety. It may, therefore, be inferred that the accident was caused, in whole or in part, by the negligence of an unidentified driver who thereafter fled the scene.[1]

---

1. For purposes of the "No-Fault" Law, this driver would not be consid-

The parties' submission further discloses that the policy of insurance issued by the defendant also contained the mandatory personal injury protection (hereinafter no-fault) endorsement (see, Insurance Law § 5103 [a]). Pursuant to this endorsement, the plaintiff would, ordinarily, be entitled to receive payments which would compensate him for his "basic economic loss" (see, Insurance Law § 5102 [a]). However, the stipulated statement of facts reveal that the plaintiff was paid in excess of $20,000 in workers' compensation benefits.

The Insurance Law of this State expressly provides that workers' compensation benefits serve as an offset against any "first-party benefits" payable pursuant to the no-fault scheme as compensation for "basic economic loss" (see, Insurance Law § 5102 [b] [2]). Thus, any payments specifically intended to reimburse a person for his basic economic loss are to be diminished by amounts recovered or recoverable under workers' compensation (see, Palmer v Allstate Ins. Co., 101 AD2d 127, 133). The central issue on appeal, however, is whether the workers' compensation payments may also offset any sums that the defendant would otherwise be required to pay pursuant to the uninsured motorist endorsement contained in its policy.

It is the defendant's principal contention that in view of the fact that the plaintiff has been paid workers' compensation benefits in excess of $20,000 and in view of the provision in the policy which states, in essence, that any amount payable under the uninsured motorist endorsement "shall be reduced by * * * all sums paid or payable under Workers' Compensation", the entire limit of the uninsured motorist coverage, to wit, $20,000 has been offset, and that the plaintiff, therefore, has no further right of recovery.

The plaintiff, however, counters with the argument that the intent of the Legislature in adopting the no-fault system of compensation was to assure that injured motorists receive full and prompt compensation for their basic economic losses. Moreover, the Legislature additionally intended to assure that *seriously* injured motorists obtain *additional* compensation for noneconomic losses by way of an action at law against an insured tort-feasor or pursuant to the uninsured motorist endorsement required in every policy of insurance issued or

ered a "covered person" (see, Insurance Law § 5102 [j]), and the offending vehicle would be considered an "uninsured" motor vehicle (see, Insurance Law § 5102 [i]).

delivered in this State. The essential thrust of the plaintiff's argument in support of his quest for the uninsured motorist proceeds at issue, is that the benefits recoverable under the Workers' Compensation Law should be deemed the equivalent of "first-party benefits" which, under the no-fault scheme, are designed to compensate an insured for his basic economic loss. Thus, just as uninsured motorist proceeds may be recovered in addition to first-party benefits in situations where serious injuries have been sustained, so, by the same token, should the coverage afforded by this endorsement be in addition to and not offset by benefits recoverable under workers' compensation.

■ The Supreme Court, Westchester County, essentially adopted the argument advanced by the defendant, permitted the offset, and concluded that no additional sums were owed to the plaintiff since he had received workers' compensation benefits in excess of the $20,000 liability limit of the uninsured motorist endorsement. We, however, do not agree with this conclusion and, therefore, reverse.

We begin our analysis by noting that the Supreme Court expressly relied upon *Matter of Durant (MVAIC)* (15 NY2d 408, *rearg denied* 16 NY2d 716) and *Matter of Napolitano (MVAIC)* (21 NY2d 281), in upholding the provision in the defendant's insurance policy which permits the amounts payable under the uninsured motorist endorsement to be reduced or offset by any sums received under the Workers' Compensation Law. Both the *Durant* and *Napolitano* endorsements, which were virtually identical to the one in question, were held to be legally enforceable. The aforecited cases, however, preceded the enactment of New York's no-fault system of automobile reparations *(see,* Insurance Law former art XVIII, as added by L 1973, ch 13, eff Feb. 1, 1974). Prior to the advent of the No-Fault Law, no distinction was recognized with respect to the treatment of economic and noneconomic loss. Hence, under the preexisting system of reparation, a party injured in a motor vehicle accident had to resort to the judicial process and to "classic principles of tort law" in order to obtain compensation for the injuries sustained *(see, Montgomery v Daniels,* 38 NY2d 41, 46).

Recognizing that such tort recovery was often precluded by the fact that many third-party tort-feasors were uninsured, the Legislature, in 1958, created the Motor Vehicle Accident and Indemnification Corporation (hereinafter MVAIC), a fund supported by contributions from insurers in New York, the

purpose of which was to provide compensation for individuals injured by uninsured motorists *(see, Matter of Lloyd [MVAIC],* 23 NY2d 478). Furthermore, legislation was also enacted which required the inclusion of uninsured motorist protection in every automobile liability policy issued or delivered in this State, covering vehicles principally garaged in this State *(see,* L 1958, ch 759, §§ 2, 4, eff Jan. 1, 1959, currently codified in Insurance Law § 3420 [f] [1]; § 5201 *et seq.).* The primary objective of this legislation was to afford the innocent victims of uninsured motorists the same protection available to victims of insured motorists with respect to their relative ability to obtain compensation for losses sustained in an automobile accident *(see, McCarthy v MVAIC,* 16 AD2d 35, *affd* 12 NY2d 922; *Matter of Beagle [MVAIC],* 26 AD2d 313, *appeal dismissed* 19 NY2d 834). At the time this legislation was enacted, however, there was no legally significant distinction between economic and noneconomic loss. Therefore, recovery under the then existing standard uninsured motorist endorsement included both of these elements of damages. Accordingly, since all losses suffered in an automobile accident were treated as a unitary concept, the pre-no-fault uninsured motorist endorsement under consideration in *Durant* and *Napolitano (supra),* perforce, referred to workers' compensation benefits as an offset against any insurance proceeds which might otherwise have been recoverable regardless of whether the proceeds emanated from economic or noneconomic loss. The uninsured motorist endorsement that is at the center of this controversy must, however, be examined in light of the policies and purposes underlying this State's no-fault statute and, especially, in light of the critical distinction which now exists between noneconomic and basic economic loss, as those terms are defined in the statute. Thus, contrary to the conclusion of the Supreme Court, the holdings of the *Durant* and *Napolitano* cases are not dispositive of the issue raised herein, in view of this subsequent legislation which, when considered as part of a larger scheme, clearly suggests to us that while workers' compensation benefits do serve as an offset against amounts payable as compensation for basic economic loss, such benefits should not serve to offset or diminish the sums recoverable as compensation for an injured party's noneconomic loss.

Since the enactment of the No-Fault Law in 1973, the Legislature has endeavored to integrate that statute with New York's workers' compensation program and with its system of

compensating the victims of uninsured motorists. In 1977, various sections of the Insurance Law were amended to provide that recovery, on account of "non-economic" loss, would be permitted under uninsured motorist coverage, only if the claimant had suffered "serious injury" (see, L 1977, ch 892; see also, Insurance Law § 3420 [f] [1]; § 5221). By engrafting onto the provisions governing mandatory uninsured motorist coverage the requirement that serious injury must be sustained as a precondition to recovery for noneconomic loss, the Legislature effectively eliminated the possibility that an uninsured motorist claimant would receive greater monetary protection than that afforded to a person similarly injured by a properly insured driver. Moreover, in its quest to eradicate any further disparity in the treatment of victims of insured and uninsured motorists, the Legislature additionally guaranteed that the amounts recovered for noneconomic loss under the uninsured motorist endorsement would not be reduced or diminished by any amounts paid as compensation for basic economic loss. Specifically, Insurance Law § 3420 (f) (1) provides, with reference to uninsured motorist coverage, that: "Such policy shall not duplicate any element of basic economic loss provided for under [the No-Fault Law]. No payments of first party benefits for basic economic loss made pursuant to [the No-Fault Law] shall diminish the obligations of the insurer under this policy provision for the payment of noneconomic loss and economic loss in excess of basic economic loss. Notwithstanding any inconsistent provisions of section three thousand four hundred twenty-five of this article, any such policy which does not contain the aforesaid provisions shall be construed as if such provisions were embodied therein".

By mandating that all New York automobile insurance policies include uninsured motorist coverage, and, by further providing that such coverage may not "duplicate any element of basic economic loss", it is clear that the Legislature intended to guarantee a certain minimum degree of coverage (e.g., $10,000 per person) to compensate for the noneconomic losses suffered by seriously injured victims of uninsured motorists.[2] Thus, the terms of the uninsured motorist endorsement in the defendant's policy, to the extent that it does permit a diminution of the amount recoverable on account of noneconomic loss, is plainly at variance with the legislative

2. This coverage also extends to any economic loss in excess of basic economic loss.

goal of assuring that compulsory uninsured motorist coverage not be reduced by first-party benefits, or amounts paid as compensation for basic economic loss.

The pivotal issue in this case, therefore, is whether workers' compensation payments can indeed be equated with first-party benefits, as the plaintiff so strenuously argues. We find ample evidence in the No-Fault Insurance Law, and the Workers' Compensation Law, as well as the circumstances surrounding several amendments thereto, which supports the conclusion that workers' compensation benefits may be deemed the equivalent of first-party benefits, thereby precluding the offset claimed by the defendant.

The fact that workers' compensation benefits were considered by the Legislature to be interchangeable with first-party benefits, is exemplified by Insurance Law § 5102 (b) (2), which provides, in pertinent part, that amounts "recovered or recoverable" as workers' compensation shall be offset against the amount of first-party benefits which a no-fault carrier would otherwise be obligated to pay. Thus, since the no-fault carrier need not pay its insured first-party benefits to the extent that a workers' compensation award is recovered and since the no-fault scheme expressly authorizes such a deduction, there can be little doubt that these forms of benefits were intended to cover the same loss, to wit, basic economic loss.

Evidence of a legislative intent to equate workers' compensation and first-party benefits is further illustrated by the fact that in 1978, in reaction to the holdings of the Court of Appeals in *Matter of Granger v Urda* (44 NY2d 91) and *Grello v Daszykowski* (44 NY2d 894), the Legislature amended the Workers' Compensation Law so as to provide, *inter alia,* that no workers' compensation lien would exist with respect to payments made in lieu of first-party benefits which the no-fault carrier would otherwise have had an obligation to pay *(see,* L 1978, ch 572, § 2, codified as Workers' Compensation Law § 29 [1-a]). This amendment, which embraces the notion that workers' compensation benefits do serve "in lieu of" first-party benefits, represented one step toward a full integration of the two programs. Furthermore, it is evident, from a legislative memorandum accompanying the enactment of this amendment, that the provision was adopted in order to make the payment of first-party benefits the primary responsibility of the workers' compensation carrier rather than the no-fault carrier (news mem of State Executive Dept, 1978 McKinney's Session Laws of NY, at 1748-1749). Additionally, by amending

the Workers' Compensation Law in this manner, the Legislature tacitly sought to protect an insured's right to obtain full recovery for basic economic loss without jeopardizing the insured's entitlement to nonduplicative recovery for the noneconomic losses sustained in an automobile accident.

With the foregoing in mind, we conclude that the Legislature manifestly intended that, in situations such as that at bar, the workers' compensation carrier is obligated to pay for the "basic economic loss" which results from a work-related automobile accident. Where such accident is caused by the negligence of an uninsured or unidentified driver, a seriously injured claimant is also entitled to recover for noneconomic loss pursuant to the uninsured motorist endorsement contained in the policy of insurance which covers the automobile driven at the time of the accident. Consonant with this conclusion, we hold that the amounts recoverable on account of noneconomic loss pursuant to the endorsement may not be offset by workers' compensation payments made as compensation for basic economic loss. Any holding to the contrary would effectively subvert the intent of the Legislature and would deprive an injured employee of the right to obtain compensation for losses other than basic economic loss, in direct contravention of the no-fault scheme (see also, Matter of Nasca v Royal Globe Ins. Co., 84 AD2d 675; Matter of Sinicropi v State Farm Ins. Co., 55 AD2d 957; Matter of Empire Mut. Ins. Co. [Konetsky], 92 Misc 2d 843, affd 55 AD2d 893, affd 43 NY2d 889; Matter of Spitaleri v Hartford Acc. & Indem. Co., 88 Misc 2d 431).

Our holding in this case is fully in accord with our prior decision in Matter of Amtmann (Hartford Ins. Group) (97 AD2d 469), wherein we affirmed an order of the Supreme Court, Queens County, for the reasons specified in the decision of Justice Graci. Specifically, that court noted:

"Generally, a claimant for uninsured motorist benefits who is involved in a hit-and-run accident, but not in the course of his employment, does not receive Workers' Compensation benefits, but is entitled to receive his full no-fault benefits, plus undiminished uninsured motorist benefits. In contrast thereto, the claimant in the case at bar, involved in a similar accident while in the course of his employment, receives Workers' Compensation benefits which it has been demonstrated are the equivalent of his basic economic loss, receives no 'no-fault' benefits, and is deprived of uninsured motorist benefits recognized to be his non-economic loss. At the same

time, the insurance carrier derives a windfall therefrom by not being obligated to repay to anyone the moneys it recouped from the non-payment of the uninsured motorist benefits. Surely, it was not the intention of the Legislature to punish a claimant merely because his accident happened during the course of his employment, and at the same time to reward the carriers under the same circumstances.

"It may be argued that the courts are bound by the terms of the insurance contract. However, our courts have the power to direct that any provisions of the contract which are contrary to the clear and express intent of the statute must fall *(Country-Wide Insurance Co. v Wagoner,* 45 NY2d 581). In the case at bar, the restrictive language of the uninsured motorist endorsement concerning Workers' Compensation offsets against the uninsured motorist benefits must likewise give way to the statutory prescription that 'basic economic loss' may not be used to deprive an uninsured claimant of the uninsured motorist benefits or any part thereof".

We adhere to this rationale and further note that we do not consider the holdings of *Matter of Della Penta (Liberty Mut. Ins. Co.)* (51 AD2d 125) or *Matter of Williams (New Hampshire Ins. Co.—Amoco Oil)* (64 AD2d 637) to be contrary to our decision herein in the absence of any indication that the court, in those cases, actually passed upon the precise claim raised at bar. In any event, to the extent that the aforecited decisions may, indeed, be read as authority for the proposition that such an offset is permissible, our affirmance in the *Amtmann* case *(supra)* necessarily constitutes a rejection of this view.

There remains one further issue to be decided. As indicated above, the Insurance Law § 3420 (f) (1) requires that every New York automobile insurance policy provide for uninsured motorist coverage with certain monetary limits, including a required limit of at least $10,000 per person. However, additional uninsured motorist protection *may* be purchased, in order to afford a higher level of coverage *(see,* Insurance Law § 3420 [f] [2]). Since the parties herein agree that the defendant's policy provided for uninsured motorist protection to the extent of $20,000, it would appear that supplemental uninsured motorist coverage has been provided thereunder.[3]

---

3. The stipulated statement of facts upon which we rely does not specify whether the $20,000 limitation on uninsured motorist liability is per person or per occurrence. However, since the plaintiff apparently was the only

■ For the reasons discussed above, we find that the policy provision permitting payments made pursuant to the *mandatory* uninsured motorist endorsement to be offset by amounts paid in lieu of first-party benefits under the Workers' Compensation Law, is violative of the Insurance Law. Such a violation, however, cannot be said to exist with respect to the supplemental uninsured motorist coverage which has apparently been provided for under this policy. The parties are free to agree to whatever terms or conditions they see fit with respect to such supplemental coverage *(cf., Matter of Reichel v Government Employees Ins. Co.,* 107 AD2d 463, *affd* 66 NY2d 1000). Put somewhat differently, while the Legislature has guaranteed that a qualified person injured by an uninsured motorist endorsement shall have at least $10,000 worth of coverage available to compensate him for pain and suffering (noneconomic loss), that person's entitlement to any greater benefits will depend solely on the terms of the insurance contract.

Accordingly, we find that the judgment appealed from should be reversed, the plaintiff should be awarded the principal sum of $10,000 payable by the defendant, and the matter should be remitted to the Supreme Court, Westchester County, for entry of an appropriate judgment.

BROWN, J. P., NIEHOFF and SULLIVAN, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, the plaintiff is awarded the principal sum of $10,000 payable by the defendant, and the matter is remitted to the Supreme Court, Westchester County, for entry of an appropriate judgment.

---

insured party injured in the accident in question, and since he is requesting the full amount of the endorsement, we proceed on the assumption that the $20,000 policy limitation is per person.