636 So.2d 658 (1994)
NATIONWIDE MUTUAL INSURANCE COMPANY
v.
Guy Arthur GARRIGA.
No. 90-CA-0493.
Supreme Court of Mississippi.
March 31, 1994.
*659 Rodney D. Robinson, Billy W. Hood, Allen Cobb & Hood, Gulfport, for appellant.
Gail D. Nicholson, Nicholson & Nicholson, Chester D. Nicholson, Gulfport, for appellee.
C. Victor Welsh, III, Crymes G. Pittman, Pittman, Germany, Roberts & Welsh, Jackson, for amicus curiae.
En Banc.

ON PETITION FOR REHEARING
BANKS, Justice, for the Court:
On Petition for Rehearing, the former opinions of this Court are withdrawn and this opinion substituted therefor.
We have previously observed that our uninsured motorist statutes do not permit insurance contracts which would enable the carrier to contract for less than the minimum coverage. Today we squarely address the question, "What is the minimum?" Our answer is that the minimum is that amount of coverage that the insured elects up to the amount of liability coverage purchased. Accordingly, we overrule In re Koestler: Casualty *660 Reciprocal Exchange v. Federal Insurance Company, 608 So.2d 1258 (Miss. 1992), and affirm the judgment of the circuit court disallowing a worker's compensation payment offset, which would reduce the uninsured motorist exposure below that contracted for by the insured pursuant to the provisions of Mississippi Code Annotated, Section 83-11-101(2) (1972).

I.
Guy Arthur Garriga filed a complaint against Benjamin LeRoy Walker, Sr., in the Circuit Court of Harrison County on May 26, 1987. The complaint sought damages for personal injuries suffered in a January 21, 1986, automobile accident. On February 1, 1989, Garriga amended the complaint to include Nationwide Mutual Insurance Company (hereinafter Nationwide), his uninsured motorist carrier, as a party-defendant. United States Fidelity and Guaranty Company (hereinafter USF & G) intervened in the action seeking to protect its subrogation lien and recover workers' compensation benefits being paid to Garriga as a result of the accident.
A settlement was reached between Walker, USF & G, and Garriga. Walker agreed to pay the limits of his liability insurance coverage ($10,000). USF & G agreed to waive any potential subrogation claim to the proceeds of the liability and uninsured motorist policies in exchange for no further workers' compensation claims. At that point, USF & G had paid Garriga $25,198.68 in medical and indemnity compensation. USF & G and Walker were dismissed from the lawsuit.
Nationwide, the uninsured motorist carrier, tendered and Garriga accepted $15,000, representing the limit of what Nationwide contended was owed under the underinsured motorist coverage, after applying the workers' compensation reduction provision. Nationwide and Garriga entered a joint stipulation of facts regarding the lawsuit, and submitted the issue of validity of the workers' compensation offset issue on cross-motions for summary judgment.
The Circuit Court sustained Garriga's cross-motion for summary judgment holding that Garriga was entitled to recover full policy limits less that offset by liability insurance benefits paid by Walker, the tortfeasor, and entered judgment in favor of Garriga in the amount of $25,000. Feeling aggrieved, Nationwide appealed to this Court.

II.
At the time of the accident on January 21, 1986, Garriga was working for the Gulfport City Police Department. While proceeding to a burglary scene, Garriga was involved in an automobile accident with Benjamin LeRoy Walker, Sr., and Peter J. Marchetto. The negligence of Walker was the proximate contributing cause of the accident.
Garriga had automobile insurance with Nationwide including two separate liability policies insuring two vehicles in his household. The policies provided uninsured motorist coverage for Garriga in the sum of $25,000 for each policy or an aggregate coverage of $50,000. Under the policies, Nationwide agreed to pay Garriga all sums up to $50,000 which Garriga may be legally entitled to recover as damages from an operator or owner of an uninsured automobile for bodily injury.
As a result of the accident with Walker, Garriga suffered a ruptured disk which resulted in a 25 percent permanent disability. According to his physician, Garriga cannot return to active duty as a patrol officer, but can perform light duty. At the time of the filing of these pleadings, Garriga had incurred medical expenses of $16,810.95.
At the time of the accident Walker was covered by a liability insurance policy up to $10,000. The Gulfport City Police Department had rejected uninsured motorist coverage, but provided workers' compensation insurance to its employees through USF & G. Garriga filed a workers' compensation claim against the police department, and had been paid a total of $25,198.68 at the time of filing. Of that total, $16,810.95 represented medical payments and $8,387.74 in lost wages.
This action was originally filed by Garriga against Walker and Nationwide. USF & G intervened to protect its subrogation lien for amounts paid to Garriga in workers' compensation benefits. Walker, through his insurance company, voluntarily paid the $10,000 *661 limit of his policy. In exchange for Garriga's agreement not to pursue additional claims against the workers' compensation carrier, USF & G agreed to waive its subrogation interests to the proceeds being paid by Walker and waive any subrogation interests it might have had to the proceeds being paid by Nationwide under its underinsured motorist coverage.
Nationwide voluntarily tendered to Garriga $15,000 of the aggregate policy limits of $50,000 provided through Garriga's uninsured insurance coverage. Nationwide contends that $15,000 is the total coverage available, as Garriga has already received $25,000 through workers' compensation and $10,000 from Walker. Garriga has received a total of $50,000 from the three entities.
The Nationwide policy uninsured motorist endorsement provided the following limitation of liability:
Uninsured Motorist Coverage does not apply to an Insured:
.....
(5) so as to inure directly or indirectly to the benefit of any workman's compensation or disability benefits carrier or any person or organizations qualifying as a self-insurer under any workman's compensation or disability benefits law or any similar law;
Additionally, the policy contained an endorsement which provided:
B. The Limits of Liability condition is deleted and replaced with the following:
.....
(9) Any amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law shall be applied in reduction of the amount of damages which the insured may be entitled to recover under this endorsement.
Nationwide moved for summary judgment, arguing that no questions of fact existed, only one question of law. Garriga filed a cross motion. The question put by the motions was whether under Mississippi law, an insurer can contractually limit, credit or offset the amount of workers' compensation benefits received by its insured to the extent such uninsured motorist coverage exceeds the statutory minimum required. Included in the stipulations was a statement that Nationwide would agree to pay Garriga the additional $25,000, if the circuit court found in Garriga's favor and the Mississippi Supreme Court affirmed that decision.
The parties stipulated that Garriga's damages reached $50,000. Nationwide argues that it is only limiting Garriga from receiving a windfall. The reduction clause, however, is so broad, that even if Garriga had $100,000 in damages his insurance liability would only pay the policy limit minus workers' compensation payments. Under the reduction clause Nationwide will always reduce the $50,000 policy limit if workers' compensation has been paid, no matter the ultimate damages suffered. In fact, if Garriga had received $50,000 in workers' compensation, this clause would act to deny him any recovery, even the $10,000 statutory minimum.
The trial judge ruled that the reduction clause for workers' compensation benefits received contained within the insurance policy was ambiguous and unclear when read with the declaration page, and that it was unenforceable as a matter of law. The trial judge held that Garriga was entitled to recover the full policy limits offset by the liability insurance benefits paid by the tortfeasor.

III.
"This Court conducts a de novo review of the record on appeal from a grant of a motion for summary judgment." Pace v. Financial Security Life of Mississippi, 608 So.2d 1135, 1138 (Miss. 1992); Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988). In Pace, this Court reiterated the initial standard to be used in considering a motion for summary judgment:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should *662 forthwith be entered in his favor. Otherwise the motion should be denied.
Pace, 608 So.2d at 1138 (quoting Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983)) (emphasis added). See also, Lovett v. Anderson, 573 So.2d 758, 760 (Miss. 1990).

IV.
We start with the basic principles involved in analyzing contracts between individuals and insurance companies. This state's law recognizes the general rule that provisions of an insurance contract are to be construed strongly against the drafter. Williams v. Life Insurance Company of Georgia, 367 So.2d 922, 925 (Miss. 1979). Any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage. Government Employees Insurance Company v. Brown, 446 So.2d 1002, 1006 (Miss. 1984) (hereinafter GEICO); Monarch Insurance Company of Ohio v. Cook, 336 So.2d 738, 741 (Miss. 1976).
The trial judge found that the language within the reduction clause for workers' compensation benefits was clear and unambiguous when read in isolation, but became unclear and ambiguous when read with the declaration page. He ruled that because the reduction clause sought to limit the coverage intended on the declaration page, it was unclear and ambiguous, and thus, must fail. In doing so, the trial judge relied on this Court's ruling in GEICO. In GEICO, the "limits of liability" clause attempted to preclude the insured from aggregating coverages under a multi-vehicular policy with respect to uninsured motorist coverage. The declaration page, however, provided "separate coverages for uninsured motorist on three vehicular units and charge[d] separate premiums therefor while the `limits of liability' clause [sought] to repudiate such coverage." GEICO, 446 So.2d at 1006. This Court found that the "limits of liability" clause when read with the declaration page was unclear and ambiguous and that the uninsured motorist coverage should be aggregated. Id.
In the case at hand, however, none of the parties dispute the fact that Garriga is entitled to aggregate the uninsured motorist coverage. The declaration page provides that the "limit of the Company's liability ... shall be subject to all the terms of this Policy." The policy clearly states that "[a]ny amount paid ... under any workers' compensation law ... shall be applied in reduction of the amount of damages which the insured may be entitled to recover... ." This Court finds that the lower court erred in determining that the above language is ambiguous and unclear when read together with the declaration page. Thus, the next step is to determine whether the clause is enforceable.

V.
The question hinges on "the common law principle that contracts contrary to public policy are unenforceable, no matter how clear or unambiguous they may be." In re Koestler: Casualty Reciprocal Exchange v. Federal Insurance Company, 608 So.2d 1258, 1262 (Miss. 1992). This Court has held that an insured shall receive full benefit for what he pays. Hartford Accident & Indemnity Co. v. Bridges, 350 So.2d 1379, 1381 (Miss. 1977). In Hartford, this Court noted that there is persuasion to the argument that if an insured has paid for coverage, accordingly he should be entitled to it, "limited only by the amount of damages which may be judicially determined." Id. In the case sub judice, the parties stipulated that Garriga's damages reached $50,000.
In Bowen v. Magic Mart of Corinth, 441 So.2d 548, 549-50 (Miss. 1983), this Court held that an employer's workers' compensation carrier could not reduce benefits to the employee by the amount paid to the employee through her own personal policy of health and accident insurance. Likewise, this Court held that an employer's workers' compensation carrier has no right to the injured employee's uninsured motorist benefits provided by the employer's uninsured motorist carrier. Cossitt v. Nationwide Mutual Insurance Company, 551 So.2d 879, 886 (Miss. 1989).
Workers' compensation is a remedy provided an injured worker regardless of fault. The purpose of the law is "to facilitate the payment of compensation without delay *663 and without unnecessary cost." H.C. Moody & Sons v. Dedeaux, 223 Miss. 832, 842-43, 79 So.2d 225, 228 (1955). Workers' compensation is an exclusive remedy. Miss. Code Ann. § 71-3-9 (1972). The payment of workers' compensation is regulated by statute, and does not provide for the same damages that are available in a tort action. Workers' compensation sets out specific maximum and minimum recoveries. It does not cover lost wages in full, nor does it fully compensate for permanent disabilities. See Miss. Code Ann. §§ 71-3-13 to -21 (Supp. 1992).
In Koestler, this Court held that insurers can contract as they please as to excess uninsured motorist coverage:
Insurance policies are privately made law. Except as limited by the public law, we respect the right of insurer and insured to contract freely one with the other. See, e.g., Perry v. Southern Farm Bureau Casualty Insurance Company, 251 Miss. 544, 550, 170 So.2d 628, 630 (1965). This is another powerful public policy our law accommodates with that regarding the UM menace. Our Uninsured Motorist Act does indeed inhibit freedom of contract, but not beyond its terms. We held early that insurer and insured as
free to contract as to uninsured motorist coverage in any respect so long as the required coverage is not cut down by the policy provisions.

State Farm Mutual Automobile Insurance Co. v. Talley, 329 So.2d 52, 54 (Miss. 1976) (quoting Talbot v. State Farm Mutual Automobile Insurance Co., 291 So.2d 699, 701 (Miss. 1974)). We have repeatedly held
[a]ny attempt to contractually limit an insurer's duty of coverage ... may not be effective to narrow the requirements of ... [the] statute.

State Farm Mutual Automobile Insurance Co. v. Nester, 459 So.2d 787, 789 (Miss. 1984). But the act "allows insurers to contract [as they please] with regard to excess coverage." Wickline v. United States Fidelity & Guaranty Co., 530 So.2d 708, 717 (Miss. 1988) (quoting State Farm Mutual Automobile Insurance Company v. Kuehling, 475 So.2d 1159, 1162 (Miss. 1985)). Put another way, there is no public policy against limiting insurance coverages. Over and above legally mandated minimums, the parties have always remained free to agree as they wish. The Act but reinforces the point when it empowers the parties to contract for coverage "over the minimum requirement."
Koestler, 608 So.2d at 1263.
This Court further noted:
Following its prescription of mandatory minimum coverage, Section 83-11-101(2) reads:
however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of property damage liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section.
Thus, the insured is not required to purchase excess UM coverage but may, if he wishes  and if the UM insurer is willing to sell it to him. Nothing in the Act requires an insurer to sell an insured more than minimum coverage.
Koestler, 608 So.2d at 1263 n. 2.
As shall be shown later, the error here is not in what is said, but in what we found to be "excess" coverage as opposed to "minimum" coverage. See, Koestler, 608 So.2d at 1271 (Banks, J. dissenting) ("The problem is that [the majority] accepts as the minimum amount the amount set forth in Miss. Code Ann. § 63-15-3.").
The United States District Court for the Southern District of Mississippi dealt with a similar reduction clause in Porter v. Shelter General Insurance Co., 678 F. Supp. 151 (S.D.Miss. 1988). In Porter, the United States District Court held that the parties were "free to contract for supplemental benefits so long as the uninsured motorist benefits do not exceed the liability benefits." Id. at 153. Furthermore, the uninsured motorist coverage could be reduced by the workers' compensation benefits pursuant to the contract as long as it was not reduced below the statutory minimum. Id. at 152-53. Although the contract did not contain any language *664 with regard to the statutory minimum, as in the case sub judice, the United States District Court held that the language was implied:
Under Mississippi law, the existing law becomes part of a contract:
An equally well-settled rule, recognized by Mississippi, is that courts will imply that the laws in force when a contract was made were intended by the parties to be a part of the contract as much as if they had been expressly incorporated therein.

Mid-Continent Telephone Corp. v. Home Telephone Co., 319 F. Supp. 1176, 1192 (N.D.Miss. 1970). Accordingly, the ... policy should be read to require payment of the statutory minimum for uninsured motorist benefits and to provide that only the supplemental benefits should be reduced because of workers' compensation.
Porter, 678 F. Supp. at 153.
The enforceability of such clauses has been dealt with by other jurisdictions in various ways. See A.S. Klein, Annotation, Uninsured Motorist Coverage: Validity and Effect of Policy Provision Purporting to Reduce Coverage by Amount Paid Under Workmen's Compensation Law, 24 A.L.R.3d 1369 (1969). Other jurisdictions, however, have held similar clauses invalid to the extent that they reduce uninsured motorist coverage below the statutory minimum. See, e.g., Williams v. Buckelew, 246 So.2d 58, 68 (La. Ct. App. 1970), on reh'g (1971); Valente v. Prudential Property and Casualty Insurance Co., 157 A.D.2d 732, 550 N.Y.S.2d 25 (2d Dep't 1990), aff'd, 77 N.Y.2d 894, 571 N.E.2d 71, 568 N.Y.S.2d 901 (1991); Fox v. Atlantic Mutual Insurance Co., 132 A.D.2d 17, 521 N.Y.S.2d 442, 448 (2d Dep't 1987).

VI.
The question before the court is essentially one of statutory interpretation. That is what is the minimum coverage prescribed by statute? An analysis of the statute prescribing the minimum coverage leads inescapably to the conclusion that we misapprehended the minimum in Koestler. We now overrule Koestler and hold that the minimum required coverage which may not be offset by clauses such as that here involved is the coverage that the insured chooses up to that amount equal to the liability amount acquired.
A review of the development of our uninsured motorist legislation in this regard, not fully discussed in either of the Koestler opinions, is instructive and compels a different result. From the beginning, the legislature provided that the parties were free to contract for coverage in excess of that mandated and that such coverage was not governed by the act. Laws of 1966, ch. 524, § 6, now codified as Miss. Code Ann. § 83-11-111 (Supp. 1993). In 1974, a bill entitled "AN ACT to amend Section 83-11-101, Miss.Code of 1972, to provide that uninsured motorist coverage limits may be increased, at the option of the insured, to equal limits of bodily injury liability of the insured; ... ." was passed. Laws of 1974, ch. 393.
It is significant that the section amended is that which requires that the uninsured motorist coverage be offered and which establishes its minimum. Miss. Code Ann. § 83-11-101 (Supp. 1993). The amendment, then, may not be rationally read as a limitation on the power to contract for excess insurance, a power recognized and codified in § 83-11-111. It must be read for what it plainly imports, an option given the insured to increase coverage, over which the insurer has no control other than refusal to increase bodily injury liability limits.
Finally, in 1979 when the legislature was about the business of providing for underinsured motorist coverage, it amended § 83-11-111, "to conform to the foregoing provisions" by adding the phrase "except as otherwise provided in this article." Laws of 1979, ch. 429, Title and § 3. This language was inserted immediately after the provision that excess coverage is not governed by the act. Id. Again, placement is crucial to interpretation. The inserted phrase was not placed after the clause dealing with the right of the parties to contract but after the clause dealing with whether such excess coverage is controlled by the provisions of the article. The only provision in the article to which this language could possibly refer is the provision *665 for the insured's option to buy coverage up to the limits of liability coverage. The amendment makes clear that such coverage is controlled by the statutory scheme and is not ungoverned "excess" coverage. Id.
The "Erie guess" made by the Porter court that both parties have freedom of contract between the minimum and the liability limits and none above the liability limits is simply wrong. See, Porter v. Shelter General Insurance Co., 678 F. Supp. 151 (S.D.Miss. 1988). That Court relied upon Talbot v. State Farm Mutual Automobile Ins. Co., 291 So.2d 699, 701 (Miss. 1974). The opinion in Talbot, issued in January 1974, preceded and may have precipitated the 1974 amendment approved in March of the same year providing for the insured's option. Talbot, 291 So.2d 699; Laws of 1974, Ch. 393. Talbot, therefore, provides no guidance for interpretation of the statutory scheme in its present form. See also, Johnston v. Safeco Ins. Co. of America, 727 F.2d 548 (5th Cir.1984) (Also relying on Talbot for the conclusion that express rejection of coverage up to the liability limits is not required.) Compare, Lumbermen's Mutual Casualty Co. v. Beaver, 355 So.2d 441 (Fla. Dist. Ct. App. 1978) (reaching the opposite result construing a statute similar to our present statute).
The correct interpretation of the statutory scheme as it developed and in its present form is that carriers are commanded by statute to provide coverage up to the amount of liability insurance purchased where the insured so desires and cannot reduce this amount by exception of the type here involved.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
PITTMAN, J., dissents with separate written opinion, joined by JAMES L. ROBERTS, Jr., and SMITH, JJ.
PITTMAN, Justice, dissenting:
I must respectfully dissent. Contrary to this Court's previous opinion In re Koestler: Casualty Reciprocal Exchange v. Federal Insurance Company, 608 So.2d 1258 (Miss. 1992), the majority now holds that the insured rather than the Legislature sets the statutory minimum amount of uninsured motorist coverage limited only by the amount of liability coverage purchased and that this uninsured motorist coverage cannot be reduced by any language contained in the insurance contract.
Section 83-11-101(1) of the Mississippi Code Annotated, however, clearly provides that the minimum amount of uninsured motorist coverage shall be no less than that required by the Mississippi Motor Vehicle Safety-Responsibility Law. The Mississippi Motor Vehicle Safety-Responsibility Law provides that the minimum limits are $10,000.00 for any one person and $20,000.00 per accident. Miss. Code Ann. § 63-15-11 (1972).
Section 83-11-101(1) further provides that the insured can obtain more uninsured motorist coverage as long as the amount does not exceed the liability limits of the policy. The majority interprets this to mean that the insured can set the statutory minimum which cannot be reduced by any contractual language. The fact that the legislature allowed for coverage in excess of the statutory minimum implies by its very nature that the insured and insurer would have to come to an agreement as to the excess coverage. The majority's opinion infringes on the parties' freedom of contract.
Although the majority now disagrees with Koestler, I reassert the language of its well-reasoned holding:
Insurance policies are privately made law. Except as limited by the public law, we respect the right of insurer and insured to contract freely one with the other. See, e.g., Perry v. Southern Farm Bureau Casualty Insurance Company, 251 Miss. 544, 550, 170 So.2d 628, 630 (1965). This is another powerful public policy our law accommodates with that regarding the UM menace. Our Uninsured Motorist Act does indeed inhibit freedom of contract, *666 but not beyond its terms. We held early that insurer and insured as
free to contract as to uninsured motorist coverage in any respect so long as the required coverage is not cut down by the policy provisions.

State Farm Mutual Automobile Insurance Co. v. Talley, 329 So.2d 52, 54 (Miss. 1976) (quoting Talbot v. State Farm Mutual Automobile Insurance Co., 291 So.2d 699, 701 (Miss. 1974)). We have repeatedly held
[a]ny attempt to contractually limit an insurer's duty of coverage ... may not be effective to narrow the requirements of ... [the] statute.

State Farm Mutual Automobile Insurance Co. v. Nester, 459 So.2d 787, 789 (Miss. 1984). But the act "allows insurers to contract [as they please] with regard to excess coverage." Wickline v. United States Fidelity & Guaranty Co., 530 So.2d 708, 717 (Miss. 1988) (quoting State Farm Mutual Automobile Insurance Company v. Kuehling, 475 So.2d 1159, 1162 (Miss. 1985)). Put another way, there is no public policy against limiting insurance coverages. Over and above legally mandated minimums, the parties have always remained free to agree as they wish. The Act but reinforces the point when it empowers the parties to contract for coverage "over the minimum requirement."
Koestler, 608 So.2d at 1263 (footnote omitted). See also Porter v. Shelter General Insurance Co., 678 F. Supp. 151, 152-53 (S.D.Miss. 1988); Williams v. Buckelew, 246 So.2d 58, 68 (La. Ct. App. 1970), on reh'g (1971); Valente v. Prudential Property and Casualty Insurance Co., 157 A.D.2d 732, 550 N.Y.S.2d 25 (2d Dep't 1990), aff'd, 77 N.Y.2d 894, 571 N.E.2d 71, 568 N.Y.S.2d 901 (1991); Fox v. Atlantic Mutual Insurance Co., 132 A.D.2d 17, 521 N.Y.S.2d 442, 448 (2d Dep't 1987).
The majority's infringement on the freedom of contract goes further than the Legislature intended. I would reverse and render holding that the clause reducing uninsured motorist coverage by workers' compensation benefits is enforceable to the extent that it does not reduce the coverage below the statutory minimum. In other words, the clause is enforceable to the extent that it does not reduce the uninsured motorist coverage below $20,000.00 since Garriga is entitled to stack his uninsured motorist coverage on both vehicles covered by the policy.
JAMES L. ROBERTS, Jr., and SMITH, JJ., join this opinion.