727 So.2d 776 (1999)
Gary HALL and Anderson Hall d/b/a H & H Milk Hauling, Inc., Appellants,
v.
MID-AMERICA DAIRYMEN, INC., Appellee.
No. 98-CA-00132-COA.
Court of Appeals of Mississippi.
January 12, 1999.
*777 Susanne A. Merchant, Meridian, Attorney for Appellants.
William C. Hammack, Meridian, Attorney for Appellee.
Before BRIDGES, C.J., and PAYNE and SOUTHWICK, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. This action commenced on July 16, 1996, when Gary and Anderson Hall d/b/a H & H Milk Hauling, Inc., filed a complaint against Mid-America Dairymen, Inc., Richard Strawick and Dr. Wallace.[1] Although named as defendants in this action, process was not served on Strawick or Wallace. After a completion of discovery, Mid-America moved for summary judgment on November 25, 1997. Summary judgment was granted to Mid-America. Feeling aggrieved, H & H Milk Hauling, Inc. perfected its appeal. Having reviewed the law and the facts germane to the issue presented, we affirm the trial court below.

FACTS
¶ 2. Southern Milk Sales, Inc. (Southern) was a cooperative of dairy producers in the Southeastern United States. This cooperative membership included dairy farmers in Mississippi. Member producers contracted with Southern to transport their unprocessed milk from their farms to the processing plants. The agreement that these member producers signed provided that the association (being Southern) would direct transportation of the unprocessed milk to the place and people determined by it. The contracts signed by Southern with member producers stated:
MEMBER agrees to deliver all milk produced by MEMBER not necessary for on the farm consumption by MEMBER to the ASSOCIATION at such place or places and to such person or persons and on such carrier as the ASSOCIATION shall direct.
¶ 3. In 1980, Anderson Hall was approached by representatives of Southern Milk Sales, Inc. who requested that he begin hauling milk for Southern's member producers. This business model would link the dairy farmers to trucking which would transport the milk to processing plants. Hall agreed to transporting milk for Southern. At no time did Anderson Hall or Gary Hall, personally or acting on behalf of the company, sign a written agreement to transport milk to the processing plants.
¶ 4. In 1986, Gary and Anderson Hall incorporated their business, naming the business entity H & H Milk Hauling, Inc. (H & H). Thereafter, H & H assumed the position as a hauler of milk for Southern. At times, H & H obtained written contracts from the individual dairy farmers on behalf of Southern, Gary or Anderson Hall only acted as witnesses to these agreements.
¶ 5. H & H's compensation was based upon the amount of unprocessed milk transported from a particular producer's farm to the processing facility. These business excursions would at times entail lengthy interstate trips. From a review of deposition testimony given by Anderson Hall, H & H profited from transporting unprocessed milk to producers interstatemore so than transporting milk intrastate.
¶ 6. In March 1995, Southern merged with Mid-America. As a result of this consolidation, there were more member producers and processing plants than prior to the merger. Subsequently to the merger, Mid-America implemented a policy under which unprocessed milk would be transported to the plant nearest the member producers' dairy farms. This business measure reduced the need for interstate transportation of milk between processing plants that had previously taken place.
¶ 7. Mid-America's new milk hauling policy went into effect on May 1, 1995. Although H & H operated under the plan until July 18, 1995, the Halls had decided to discontinue H *778 & H's operations at the time they first received notice of the new policy.

PRELIMINARY MATTER
¶ 8. As a preliminary matter, the motion for summary judgment was granted against Gary Hall and Anderson Hall as individuals. The Halls incorporated their business in 1986 and a corporation is the only party to a suit with standing to raise the issues presented. Concerning this issue, the Mississippi Supreme Court noted in Bruno v. Southeastern Services, Inc., 385 So.2d 620, 622 (Miss.1980) the following:
We adopt the rule in Mississippi that an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative. The rule applies even though the complaining stockholder owns all or substantially all of the stock of the corporation.
This being the case, we affirm the trial judge's decision to quash the complaint on behalf of Gary or Anderson Hall as individuals to the complaint.

STANDARD OF REVIEW
¶ 9. We conduct a de novo review of the record to determine whether the trial court properly granted a motion for summary judgment. Nationwide Mut. Ins. Co. v. Garriga, 636 So.2d 658, 661 (Miss.1994); Pace v. Financial Sec. Life, 608 So.2d 1135, 1138 (Miss.1992); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss.1988). The de novo review includes looking at the evidentiary matters and viewing them in the light most favorable to the party against whom the motion has been made. Nationwide Mut. Ins. Co., 636 So.2d at 661. The movant has the burden of proving that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993). "Summary judgment is appropriate if the evidence before the Courtadmissions in the pleadings, answers to interrogatories, depositions, affidavits, etc.shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Rockwell v. Preferred Risk Mutual Ins. Co., 710 So.2d 388, 389 (Miss.1998) (citing Newell v. Hinton, 556 So.2d 1037, 1041 (Miss.1990)).

ISSUES PRESENTED

I. WHETHER THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT MOTION TO MID-AMERICA DAIRYMEN, INC.
¶ 10. H & H insists that the lower court failed to view the facts in the light most favorable to them. H & H also notes that the lower court failed to recognize the existence of the genuine issue of material fact. We disagree.
¶ 11. Specifically, H & H argues that representatives of Mid-America prevented milk producers from contracting with H & H to haul their milk. According to H & H, this action by Mid-America severely crippled their business. Feeling aggrieved by Mid-America's action, H & H filed suit, alleging that Mid-America tortuously interfered with the contractual relations that H & H held with the dairy farmers and processing plants. In further support of the argument presented, H & H states that the trial court should have considered Anderson Hall's seventeen year business relationship with the milk producers, Southern Milk, and Mid-America in determining that he had a relationship with all three groups. Anderson Hall testified at his deposition that he relied on these contracts to his detriment, and insists that if given a trial on the merits, he, along with several farmers would clarify before the jury, whether a contract existed.
¶ 12. In Collins v. Collins, 625 So.2d 786, 790 (Miss.1993), the Mississippi Supreme Court listed the elements needed to establish tortuous interference with contractual relations. These elements are:
1. that the acts were willful and intentional acts on the part of the defendants;
2. that the acts were calculated to cause harm to the plaintiffs in their lawful business

*779 3. that the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and
4. that actual damages and loss occurred.
¶ 13. Mid-America argues that it implemented a milk hauling policy in 1995 in order to reduce costs to its member producers. In an explanation of its operation, Mid-America notes that the cooperative's sole function is to produce and market milk for its member producers in order to generate maximum return. According to Mid-America, H & H was only an independent contractor, retained only to collect and transport unprocessed milk from individual dairy farmers and had no legal relationship with Mid-America's member producers.
¶ 14. From our review of the situation, we cannot say that this new business paradigm employed by Mid-America tortuously interfered with any contractual relations H & H had between themselves and the member producers, as there was no contract between those respective parties. Likewise, Anderson Hall testified that he continued to haul milk for sometime after being notified of the new policy. He stated:
Q. Okay. Let me start over. The new policy went into effect on May the 1st of '95.
A. That's correct.
Q. So, from May the 1st of '95 until July the 18th of '95, you worked under the new policy?
A. That is correct.
¶ 15. As noted in Vestal v. Oden, 500 So.2d 954, 957 (Miss.1986), in order to be actionable the interference with contractual relations must be "wrongful" in such a way as to be "without right or justifiable cause on the part of the defendant." In this instance, Mid-America's decision to eliminate transportation of the unrefined milk was justifiable. Although, Mid-America's new policy may have had an adverse economic impact on H & H, there has been no showing that the measure was in any way unlawful.
¶ 16. That being said, we find no error in the lower court's holding.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, KING and SOUTHWICK, JJ., concur.
IRVING and LEE, JJ., not participating.
NOTES
[1] The record does not give Dr. Wallace's full name.