Calvin P. LAND, Jr., Plaintiff–Appellee,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant–Appellant.

No. 95–60076.

United States Court of Appeals, Fifth Circuit.

March 25, 1996.

---

Herman Monroe Hollensed, Jr., Bryan, Nelson, Randolph & Weathers, Hattiesburg, MS, John W. Land, Hattiesburg, MS, for plaintiff-appellee.

Charles G. Copeland, William Matthew Vines, Michael Wayne Baxter, Copeland, Cook, Taylor & Bush, Jackson, MS, for defendant-appellant.

Before JOLLY, DUHÉ and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, we trespass on the ever-shifting sands of Mississippi's uninsured motorist law—in particular as it pertains to the aggregation or "stacking" of multiple policies.[1] We hold, in accordance with our un-derstanding of the most recent Mississippi law in this area, that an insurer contractually may prohibit stacking of uninsured motorist coverage(s) in a multivehicle policy, if, first, the anti-stacking provision is clear, and, second, if only a single premium is charged for that policy.

### I

This case arises from an automobile accident in which Calvin P. Land, Jr., was injured, and his father-in-law was killed. The accident was caused by the negligence of Gary Neal Zahn. At the time of the accident, Land was operating a pick-up truck. The truck was one of four vehicles insured under a single United States Fidelity and Guaranty Company ("USF & G") commercial auto policy issued to Land. This policy provided uninsured motorist ("UM") coverage of $25,000 for each of the four vehicles.

Land additionally had a personal auto policy issued by USF & G covering two vehicles. This policy provided $500,000 in liability coverage and $100,000 in UM coverage, but contained a "Limits of Liability" clause aimed at precluding stacking of UM coverage under the policy.[2] The effect of this clause—if any—is at the center of this appeal.

In August of 1993, Land sued USF & G for payment of UM benefits allegedly owed to him under the personal auto policy. In his complaint, he alleged that he had suffered damages in excess of $300,000.[3] Land acknowledged that Allstate Insurance Company, Zahn's liability insurer, had paid him its policy limits of $100,000, and that USF & G had paid him $100,000.[4] This $200,000 payment left approximately $100,000 unpaid,

---

1. The Mississippi Supreme Court defines stacking as "the practice of allowing an insured to add or 'stack' the limits of each vehicle covered under an insurance policy to pay for damages sustained in an accident." *Harrison v. Allstate Ins. Co.*, 662 So.2d 1092, 1093 (Miss.1995).

2. The relevant policy language is:

    A.  Except as provided in B. below, our maximum limit of liability for all damages resulting from any one accident is the Uninsured Motorist Coverage limit shown in the Schedule or in the Declarations applicable to each vehicle. This is the most we will pay regardless of the number of:

    (1) "Insureds;"

    (2) Claims made;

    (3) Vehicles or premiums shown in the Schedule or in the Declaration; or

    (4) Vehicles involved in the accident.

3. The parties later stipulated that the total damages to Land arising out of the accident were $295,000.

4. The $100,000 tendered by USF & G is arrived at as follows:

    $100,000 (stacking of $25,000 of UM coverage for four vehicles under Land's commercial auto policy), plus $100,000 (UM coverage available under Land's personal auto policy, *without stacking*), minus $100,000 offset (amount received by Land from Allstate, Zahn's carrier).

which could be satisfied under UM coverage, if available. Land turned, therefore, to his personal auto policy. Land argued that because it covered two vehicles, and because he had paid two UM premiums on that policy, he was entitled to stack an additional $100,-000 of UM coverage under the policy for the second covered vehicle. USF & G denied owing another $100,000 under the personal auto policy. It argued that the policy contained clear language prohibiting stacking, that Land had paid only one UM premium, and that USF & G therefore was not obligated to stack the UM coverages under the personal auto policy.

On cross-motions for summary judgment, the district court ruled that Land was entitled to stack the two UM coverages under his USF & G personal auto policy. From that order, USF & G appeals.

## II

■ Because our jurisdiction over the subject matter of this case is grounded on diversity of the parties' citizenship, we turn to the law of the forum state, Mississippi. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We review the district court's factual findings for clear error, and its legal conclusions *de novo.* Fed.R.Civ.P. 52(a); *Switzer v. Wal–Mart Stores, Inc.,* 52 F.3d 1294 (5th Cir.1995).

## A

Section 83–11–101(2) of the Mississippi Code Annotated provides in pertinent part:

No automobile liability policy ... shall be issued or delivered ... unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law....

The Mississippi Motor Vehicle Safety Responsibility Law provides:

[E]very such policy shall be subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and cost, of not less than ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, to a limit of not less than twenty thousand dollars ($20,000) because of bodily injury to or death of two (2) or more persons in any one (1) accident....

Miss.Code Ann. § 63–15–11.

■ The Mississippi Supreme Court has "accepted an ever expanding role for stacking." *In re Koestler: Casualty Reciprocal Exchange v. Federal Ins. Co.,* 608 So.2d 1258, 1261 (Miss.1992) (citations omitted).[5] In this respect, the Mississippi Supreme Court first held that an insured could aggregate coverages under separate policies, when such aggregation was allowed by the contract between the insurer and insured, in *Southern Farm Bureau Casualty Ins. Co. v. Roberts,* 323 So.2d 536 (Miss.1975). A few years later the court observed that

Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking here sought, i.e., stacking multiple coverages within a single policy, has been mandated in *[Government Employees Ins. Co. v.] Brown, Pearthree [v. Hartford Accident & Indemnity Co.],* and *Hartford Accident & Indemnity Co. v. Bridges,* 350 So.2d 1379 (Miss.1977). *See also, St. Arnaud v. Allstate Insurance Co.,* 501 F.Supp. 192 (S.D.Miss.1980). As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.

*Wickline v. United States Fidelity and Guaranty Co.,* 530 So.2d 708, 714 (Miss. 1988). Even if the language of a UM policy clearly and unambiguously precludes stacking, the policy will be considered ambiguous under Mississippi law where the declaration

---

**5.** For a complete history of Mississippi stacking law, see *Koestler,* 608 So.2d at 1261–64.

sheet charges separate uninsured motorist premiums for separate vehicles. *Government Employees Ins. Co. v. Brown*, 446 So.2d 1002, 1006–07 (Miss.1984), *cited with approval in Harrison v. Allstate Ins. Co.*, 662 So.2d 1092, 1094 (Miss.1995).

*Koestler* was the most recent Mississippi "stacking case" to be decided by the State's Supreme Court before the district court's decision here. In *Koestler*, the state trial court—in a ruling that was to be reversed by the Mississippi Supreme Court—refused to enforce an express anti-stacking provision in a UM policy. It reasoned as follows:

> [T]he fact that [the insurer] has a limitation provision in its policy which may be said to be clear and unambiguous is entirely irrelevant. What does matter, and it is the only thing that matters, is that Koestler was charged and paid separate premiums for each endorsement of uninsured motorist coverage in the amount of $250,-000 for five vehicles covered by the two policies. Pursuant to the terms of the uninsured motorist statute, [the insurer] is obligated to pay Koestler's heirs all sums which they were entitled to recover from the uninsured motorist as damages for the death of Koestler....

*Koestler*, 608 So.2d at 1260.[6] The Mississippi Supreme Court did not agree. It wrote:

> Insurance policies are privately made law. Except as limited by the public law, we respect the right of insurer and insured to contract freely one with the other.... Our Uninsured Motorist Act does indeed inhibit freedom of contract, but not beyond its terms. We held early that insurer and insured as [sic] free to contract as to uninsured motorist coverage in any respect so long as the required coverage is not cut down by the policy provisions.
>
> We have repeatedly held
>
> > [a]ny attempt to contractually limit an insurer's duty of coverage ... may not be effective to narrow the requirements of [the] statute....
>
> But the act "allows insurers to contract [as they please] with regard to excess cover-

age." Put another way, there is no public policy against limiting insurance coverages. Over and above legally mandated minimums, the parties have always remained free to agree as they wish. The Act but reinforces the point when it empowers the parties to contract for coverage "over the minimum requirement."

\*     \*     \*     \*     \*     \*

> It is no answer that CRE charged and Koestler paid a separate premium for each of his five coverages. This but begs the question, what coverage was purchased by what premium?, and we find our answer in contract and not natural law....
>
> To be sure, our stacking cases routinely take note of the payment of separate premiums. This is but an equitable note undergirding the fairness of the stacking mandated and enforceable by reason of contract. No particular premium purchases any particular UM coverage beyond the limits of liability language in the policy.

*Koestler*, 608 So.2d at 1263–64 (citations omitted).

Under *Koestler*, the district court in this case would have been required to turn to the policy at issue to determine, first, if it clearly limited stacking, and if it did, then turn to examine the UM premiums to determine whether Land paid single or multiple premiums for his UM coverage. Instead, the district court turned to the more recently decided case of *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658 (Miss.1994).

As USF & G has repeatedly pointed out, however, *Garriga* did not contain a stacking issue. In *Garriga*, in the context of considering the enforceability of a worker's compensation payment offset clause, the Mississippi Supreme Court defined the required statutory minimum amount of UM coverage an insurer must provide as equal to the amount of UM coverage purchased by the insured up to the amount of liability coverage provided in the policy. *Garriga* overruled *Koestler* insofar as *Koestler* had held that the minimum

---

**6.** The ruling of the trial court in *Koestler* was very similar to the district court's ruling in the case at bar; in the present case, the district court refused even to consider any limiting language in the UM policy. Further, the district court thought that the "single versus separate premiums" question was irrelevant because, in its view, a Mississippi insurer simply could not contractually limit the UM coverage of its insured.

statutorily required UM coverage is that required by Miss.Code Ann. § 63–15–11—or $10,000 per person, $20,000 per accident. *Garriga* held instead "that carriers are commanded by statute to provide coverage up to the amount of liability insurance purchased where the insured so desires and cannot reduce this amount by exception of the type here involved [through the worker's compensation offset provision]." *Garriga,* 636 So.2d at 665. The court stated:

> We have previously observed that our uninsured motorist statutes do not permit insurance contracts which would enable the carrier to contract for less than the minimum coverage. Today we squarely address the question, "What is the minimum?" Our answer is that the minimum is that amount of coverage that the insured elects up to the amount of liability coverage purchased.

*Id.* at 659. On its face, however, *Garriga* did not overrule *Koestler's* pronouncement (echoing the holdings of earlier cases) vis-a-vis the rights of parties to an insurance contract to limit stacking in the first place. That question—which is before us now—was not at issue in *Garriga.*[7]

**B**

Relying on *Garriga,* the district court held that the Mississippi Supreme Court has effectively imputed stacking into the Mississippi uninsured motorist statutes, and that an insurer may not limit stacking of UM policies, no matter what language it employs. On appeal, Land defends the judgment he has won, arguing that under Mississippi law, stacking is now required in every case.

Although unavailable to the district court, we now have the benefit of the most recently decided case on the subject, *Harrison v. Allstate Ins. Co.,* 662 So.2d 1092 (Miss.1995). The Mississippi Supreme Court first noted, with little discussion, that the language of the policy at issue clearly precluded stacking. It then moved to the question whether the insured had paid single or multiple premiums. *Harrison,* 662 So.2d at 1094.

■ With *Harrison* as the most recently installed beacon to point the way, we are able to say that the district court got off course by construing *Garriga* too broadly. We hold that, under Mississippi law, parties to an insurance contract may still contractually limit the stacking of UM coverages. The language used to limit this liability must be clear and unambiguous, however, *Koestler* at 1264, and, if separate premiums are charged—even in the guise of one lump sum—then the insured is entitled to stack coverage. *Harrison* at 1094–95.

**III**

Having concluded that an insurer may limit aggregation of UM policies through the use of clear and unambiguous policy language, we still must decide whether the policy in this case was so clear and unambiguous that the district court should have entered summary judgment in favor of USF & G. Next, if we find that the contract clearly limited stacking, we must determine whether the record will allow a finding that Land paid single or multiple premiums—an issue the district court relegated to a footnote.

**A**

■ USF & G argues that its policy is clear and unambiguous as a matter of law, because it mirrors the language in the policy in *Koestler,* about which the Mississippi Supreme Court wrote:

> What we have before us is limits-of-liability language no one could fail to understand. That language told Koestler, in the event he was protected by multiple UM coverages
>
> > the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

*Koestler,* 608 So.2d at 1264.

The relevant language in the USF & G policy before us reads as follows:

> [O]ur maximum limit of liability for all damages resulting from any one accident is the Uninsured Motorist Coverage limit shown in the Schedule or in the Declarations applicable to each vehicle. This is

---

7. *See Garriga* at 662 ("In the case at hand, ... none of the parties dispute the fact that Garriga

is entitled to aggregate the uninsured motorist coverage.").

the most we will pay regardless of the number of:

(1) "Insureds;"

(2) Claims made;

(3) Vehicles or premiums shown in the Schedule or in the Declaration; or

(4) Vehicles involved in the accident.

On the Declarations page, the "Limit of Liability" for "Uninsured Motorist Bodily Injury" coverage is stated as "$100,000 each accident." The Declarations page further shows only a single premium of $75, paid for Auto 1. No premium is listed under Auto 2.

Land points to the policy language that reads "our maximum limit of liability ... is the Uninsured Motorist Coverage limit shown in the Schedule or in the Declarations applicable to each vehicle," and argues that the phrase does not unambiguously preclude stacking.[8] He states that "applicable to each vehicle" injects confusion into the policy, because coverage for "each" vehicle in the policy might still be aggregated. USF & G responds that the policy, read in context and as a whole with the Declarations page, could not reasonably be read by an insured as entitling him to stack UM coverages from different vehicles.

Like the Mississippi Supreme Court in *Koestler,* we have little difficulty concluding that "[w]hat we have before us is limits-of-liability language no one could fail to understand." We think Land's reading of the policy is a strained and unnatural one; the policy clearly limits liability to the "Uninsured Motorist Coverage limit shown in the Schedule or in the Declarations applicable to each vehicle[,] regardless of the number of ... [v]ehicles or premiums shown in the Schedule or in the Declaration." The Declarations page shows UM coverage for one vehicle. In the face of this clear limitation, we cannot agree with Land that an ambiguity exists that would permit stacking of coverage.

### B

Notwithstanding whatever limiting language the policy contains, Land is nevertheless entitled to all the UM coverage for which he has paid premiums. *See Harrison,* 662 So.2d at 1094 (citing with approval *Government Employees Ins. Co. v. Brown,* 446 So.2d at 1006–07, wherein the court held that where declaration sheet charges separate uninsured motorist premiums for multiple vehicles, policy becomes ambiguous and insured is permitted to aggregate UM coverages); *Wickline,* 530 So.2d at 714 (holding that where multiple premiums are paid, multiple coverages are available). If, therefore, Land paid two premiums for UM coverage, he is entitled to stack those coverages.

In a lengthy footnote to its Memorandum Opinion and Order, the district court wrote:

For the record, the Court has considered the arguments of the parties concerning the premium issue presented in this case. Summarily, the arguments presented are that Land, at an earlier renewal, was charged a single premium on one vehicle on the policy in issue amounting to $35.00 for $100,000 UM coverage. At the subsequent renewal, that was increased to $41.00. At the next renewal, Land had added another vehicle and USF & G had begun its "single premium" anti-stacking program, it asserts was in anticipation of *Koestler.* The "single" premium for $100,000 UM coverage with two vehicles was $85.00. This was reduced to $75.00 at the next renewal which was consummated some three weeks prior to the accident at issue. Thus, USF & G was in effect charging a single premium for uninsured motorist coverage for two vehicles that was almost exactly twice what it charged for uninsured motorist coverage for one vehicle. To the extent that the "single premium" "multiple premium" semantics are at issue, this Court resolves that in favor of the plaintiff. He purchased $100,000 of UM coverage on two vehicles. USF & G cannot artfully convert its premium payment scheme to only charge a single premium which takes into consideration an extra charge for additional coverage for other vehicles.

Mem.Op. and Order of D.Ct., 861 F.Supp. 544, 550, n. 7.

The state trial court in *Harrison* faced a similar question, and squarely addressed the

---

**8.** This is, of course, an alternative argument to his primary contention that we rejected above— that insurers simply may not limit stacking in Mississippi.

single versus multiple premiums issue. There, Allstate's endorsement stated that only one premium would be charged for uninsured motorist coverage on multiple vehicles. A premium for a single vehicle was $28.40; the premium for Harrison's two covered vehicles was $52.40—a $24 difference. Harrison argued, therefore, that he was charged separate premiums for his two vehicles, and was entitled to stacked coverage. *Harrison*, 662 So.2d at 1094.

Relying on an affidavit submitted by an Allstate actuary, the trial court found that, although Harrison's premium was higher than a premium insuring one car, the charge remained constant whether two or more than two vehicles were covered. *Id.* at 1093. It reasoned that "the difference in the premium charged for one vehicle and the premium charged for two or more vehicles reflects solely the difference in expected claim frequency, the number of claims filed, and makes no allowance for increased losses under a multiple vehicle policy." *Id.* Thus, the trial court found that the higher premium could not be considered "multiple premiums" so as to create a contractual ambiguity. The trial court concluded that Harrison was not entitled to stacked UM benefits.

The Mississippi Supreme Court reversed, writing:

> Although the policy language precluding stacking is clear, we find that Harrison was actually charged separate premiums for his two vehicles under the guise of one lump sum on his declaration sheet. Because the premium for two cars is $24 more than the premium for one car, Allstate clearly charges an additional premium for the second car.

*Id.* at 1094. The Mississippi Supreme Court affirmed the denial of punitive damages for bad faith denial of benefits, however, reasoning that "Allstate had no prior notice that its revised policy was in contravention of our laws regarding stacked coverage." *Id.* at 1095. Because Allstate had paid Harrison the benefits it thought he was entitled to receive and did not engage in malicious con-

duct, the Mississippi Supreme Court rejected Harrison's claim for punitive damages.

In the case today, USF & G argues, however, that the district court had no evidence before it describing how USF & G arrived at its UM premiums. It was therefore inappropriate for the district court to have concluded that its single premium of $75.00 was actually two $41.00 premiums "in disguise," so as to create an ambiguity that would allow stacking. The argument is well taken. Both parties acknowledged at oral argument that neither had briefed the district court on the "single versus multiple premiums" issue. Despite the suspect countenance of USF & G's rate increase (especially when viewed in the light of *Harrison*), we cannot say as a matter of law that, given the opportunity, USF & G could not adduce evidence to support its argument that $75.00 represented a charge for a single premium. That issue must be resolved based on testimony and facts before the trial court, and we therefore remand the case for resolution of this issue.[9]

## IV

We hold today that the policy at issue in this case between Land and USF & G contained language that clearly and unambiguously precluded stacking of uninsured motorist coverages. In this holding, we REVERSE the holding of the district court to the contrary. The policy, however, still may be ambiguous and therefore allow stacking, if Land paid a double premium. We express no opinion on this issue, and REMAND to the district court for further consideration of this question.

**REVERSED and REMANDED.**

---

9. We note that this is not a situation where either party failed to carry its burden in presenting—or responding to—summary judgment motions. The issue before the district court on summary judgment was whether stacking in Mississippi effectively had been precluded by the Mississippi

Supreme Court in *Garriga*. Both parties acknowledged at oral argument that no discovery had been conducted on the issue of multiple premiums when they were asked by the district court to brief the stacking issue.