Robert Charles THOMAS, Edward Thomas, Moses Thomas and Henry Haywood, Jr., and Delores Thomas, as Co–Administrators of the Estate of Katherine Thomas, all as the Wrongful Death Beneficiaries of Ravella Burns, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civil Action No. 3:93–CV–601BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

July 9, 1996.

Bruce M. Kuehnle, Jr., Adams, Forman, Reuly & Smith, Natchez, MS, for Plaintiffs.

Jimmie B. Reynolds, Jr., Steen, Reynolds & Dalehite, Jackson, MS, William C. Griffin, Currie, Johnson, Griffin, Gaines & Myers, Jackson, MS, for Defendant.

## OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Motion for Summary Judgment filed by Defendant Allstate Insurance Company ("Allstate"). Having considered the Motion, Plaintiffs' Response, Defendant's Rebuttal, all attachments to each, and supporting and opposing memoranda, the Court finds that the Motion is well taken and should be granted.

I. *Background and Procedural History* [1]

On September 2, 1990, Ravella Burns ("Burns") was involved in a two-vehicle acci-

---

1. The facts of this case are not in dispute and are taken largely from Defendant's Memorandum in

dent in Adams County, Mississippi, and died as a result of that accident. The other vehicle involved in the accident was driven by Joseph R. Ware, and neither Ware nor the vehicle he was driving was covered by any automobile liability insurance at the time of the accident. Burns, however, was insured pursuant to the terms of an automobile insurance policy issued by Allstate, No. 045166694. Allstate Policy, attached as Exhibit C to Defendant's Motion. The Allstate Policy provided uninsured motorist coverage for the vehicle involved in the accident, as well as two other vehicles. The Allstate Policy provided $10,000 of bodily injury uninsured motorist coverage per person injured in an accident. The parties do not dispute that Burns paid a separate premium for each of the bodily injury liability coverages, Coverage AA, for each of the three vehicles insured by the Allstate Policy. There is a dispute, however, concerning how many premiums were paid for bodily injury uninsured motorist coverage, Coverage SS, for these same three vehicles. The Declarations Page of the Allstate Policy shows that $41.60 was paid for uninsured motorist coverage for the three vehicles.

Allstate instituted a new structure for new automobile insurance policy applicants, including Burns, beginning in September, 1989. This structure, which was approved by the Mississippi Insurance Commissioner, was intended to eliminate the "stacking" [2] of insurance coverage based upon the number of vehicles insured under any given policy. Under the new structure, Allstate charged a lump sum uninsured motorist coverage premium for all Mississippi single-vehicle households, and an increased single [3] premium for all multi-vehicle households, regardless of the number of vehicles insured under the multi-vehicle policy.

To explain this new uninsured motorist coverage and rate structure to policyholders, including Burns, Allstate included Endorsement AU1865 along with the Allstate Policy in the materials which were sent to Burns. The Endorsement AU1865 provides in relevant part as follows:

> The **"Combining Limits Of Two Or More Autos Prohibited"** provision is replaced by the following:
>
> If **you** have two or more **autos** insured in **your** name and one of these **autos** is involved in an accident, only the coverage limits shown on the declarations page for that **auto** will apply, When **you** have two or more **autos** insured in **your** name and none of them is involved in the accident, **you** may choose any single **auto** shown on the declarations page and the coverage limits applicable to that **auto** will apply.
>
> The limits available for any other **auto** covered by this policy will not be added to the coverage for the involved or chosen **auto**.

Endorsement AU1865 at 1, attached as Exhibit C to Defendant's Motion. Endorsement AU1865 also discusses the issue of combining coverages under the "Limits of Liability" section:

> **Limits of Liability**
>
> The Uninsured Motorists Coverage—Bodily Injury limits stated on the declarations page is the maximum amount payable for this coverage by this policy for any one accident. This means the insuring of more than one auto for other coverages afforded by this policy will not increase **our** limit of liability beyond the amount shown on the declarations.
>
> 1. Regardless of the number of insured autos under this coverage, the specific amount shown on the declarations is the

Support of Motion for Summary Judgment. Plaintiffs do not contest the facts, only the legal significance of those facts.

**2.** "Stacking" is defined by Mississippi law as

the practice of allowing an insured to add or "stack" the limits of each vehicle covered under an insurance policy to pay for damages sustained in an accident. For example, if the insured obtained a policy providing $10,000 in

uninsured motorist coverage for bodily injury on two vehicles, the maximum recovery would be $20,000 ($10,000 plus $10,000).

*Harrison v. Allstate Ins. Co.,* 662 So.2d 1092, 1093 n. 1 (Miss.1995).

**3.** Whether the premium for multi-car uninsured motorist coverage is actually "single" or is a multiple premium in the guise of a lump sum payment is the subject of this case.

maximum that **we** will pay under this policy for:

(a) "each person" for damages arising out of **bodily injury** to one person in any one **motor vehicle** accident, including damages sustained by anyone else as a result of that **bodily injury.**

(b) "each accident" for damages arising out of **bodily injury** to two or more persons in any one **motor vehicle** accident. This limit is subject to the limit for "each person."

*Id.* at 4. Along with Endorsement AU1865, new policyholders were sent Explanatory Insert X3641 which explains, *inter alia,* that a new policyholder may purchase uninsured motorist benefits (Coverage SS) "equal to but not greater than" the limits for bodily injury liability coverage (Coverage AA). Explanatory Insert X3641 at 2, attached as Exhibit 8 to Crane Aff., attached as Exhibit B to Defendant's Motion.

Allstate subsequently amended Endorsement AU1865, replacing it with AU1865–1 after approval of the new endorsement by the Mississippi Insurance Department on November 28, 1990. Crane Aff. at 5, ¶ 19. The Court has reviewed the provisions of each of these endorsements as quoted previously, and the language is identical. Endorsement AU1865–1, attached as Exhibit 2 to Crane Aff. The regular business practice of Allstate was to send Amendatory Endorsement AU1865–1, in conjunction with Form X3583–1 and Form X4167, to all Mississippi automobile insurance policyholders along with their policy renewal materials. *Id.* at ¶ 20. Plaintiffs have not asserted that Burns did not receive these materials upon the renewal of her policy. Both Form X3583–1 and Form X4167 contain explicit anti-stacking provisions.

"Stacking" of limits is not available under Coverage SS—Bodily Injury. "Stacking" would allow an insured to add or "stack" the Limits of each vehicle covered under the policy in order to pay for damages sustained in an accident. Because "stacking" is not available, you may want to increase your Coverage § —Bodily Injury limit (if it is less than your Coverage AA

limit) by sending in the attached selection form.

Form X3583–1 at 2, attached as Exhibit 10 to Crane Aff. Form X4167 contains similar language:

When you purchase Coverage SS—Bodily Injury, it covers all motor vehicles insured under the policy, and only one premium is charged. The Coverage SS—Bodily Injury limit of liability you choose is the most you will be able to recover in any one covered accident when an uninsured motorist is legally liable for bodily injury damages sustained by you or others insured under your policy. If you currently carry Coverage SS—Bodily Injury on your policy, your limit for this coverage is on the enclosed declarations page.

"Stacking" of limits is not available under Coverage SS-Bodily Injury. "Stacking" would allow an insured to add or "stack" the limits of each vehicle covered under the policy in order to pay for damages sustained in an accident.

Form X4167 at 2, attached as Exhibit 11 to Crane Aff.

Pursuant to its interpretation of the Allstate Policy, specifically Endorsement AUL865–1, Allstate paid to the estate and representatives of Burns $10,000 in uninsured motorist coverage benefits. The wrongful death beneficiaries of Burns, the Plaintiffs in this action, asserts that even though the Allstate Policy contains an "anti-stacking" provision, the uninsured motorist coverages should be stacked to provide a total recovery of $30,000. They claim Allstate owes them an additional $20,000 in uninsured motorist benefits. Allstate admits that the Plaintiffs, as the wrongful death beneficiaries of Burns, have suffered damages of at least $30,000.

After this lawsuit was initiated, the Court entered an Order on April 28, 1995, staying this action pending a decision by the Mississippi Supreme Court in *Harrison v. Allstate.* That decision was rendered on October 26, 1995, and held as follows: (1) the premium for a multi-car policy is actually separate premiums under the guise of one lump sum such that the insured could stack two bodily injury uninsured motorist coverages; and (2)

Allstate could not be held liable for punitive damages because the issue presented was one of first impression in Mississippi. *Harrison v. Allstate*, 662 So.2d 1092, 1094–95 (Miss.1995). The *Harrison* court declined to consider the issue *which* is presently before this Court: "We do not consider whether a second premium is charged for policies insuring more than two cars as such issue is not presently before us." *Id.* at 1094.

After the *Harrison* decision was rendered, the stay in this matter was lifted and Allstate filed a Motion for Summary Judgment asserting that it is now only liable for the payment of $20,000 to the Plaintiffs, representing the stacking of two $10,000 coverages under the uninsured motorist coverage provisions of the Allstate Policy. Because of *Harrison*, Allstate has now paid to the Plaintiffs an additional $10,000 plus interest but denies that any third coverage exists for the Plaintiffs' claim.

## II. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. at 2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, … since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court: merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

## III. *Analysis*

■ As the United States Court of Appeals for the Fifth Circuit has recently noted, Mississippi[4] uninsured motorist law is anything but clear: "In this appeal, we trespass on the ever-shifting sands of Mississippi's uninsured motorist law—in particular as it pertains to the aggregation or 'stacking' of multiple policies." *Land v. United States Fidelity & Guar. Co.*, 78 F.3d 187, 188 (5th Cir.1996). The specific issue in this case, which has not yet been addressed by the Mississippi Supreme Court or the Fifth Circuit, is whether intra-policy stacking of uninsured motorist coverages, beyond the two coverages already paid by Allstate, is available to the Plaintiffs in this matter. The Court finds that Allstate has paid to the Plaintiffs all that it is obligated to pay under

---

4. Because this case is based upon diversity of citizenship, this Court is *Erie* bound to apply Mississippi law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),

Allstate Policy No. 045166694 and is therefore entitled to summary judgment.

Allstate asserts that the relevant policy language clearly and unambiguously precludes the stacking of uninsured motorist coverages. Allstate concedes that, pursuant to *Harrison*, Plaintiffs are entitled to stack at least two coverages because a higher premium is charged for multi-vehicle coverage than for single-vehicle coverage. However, Allstate contends that because it did not charge any more premium for the third vehicle under Burns' policy than it charged for the second vehicle, *i.e.*, the multi-vehicle coverage costs the same for two or twenty vehicles, the Plaintiffs are not entitled to stack a third uninsured motorist coverage under the Allstate Policy.

Plaintiffs assert that Allstate is ignoring the relevant Mississippi uninsured motorist statutes, and that any case law and insurance policies must comply with these statutes. According to Plaintiffs, these statutes set forth mandated minimum limits of uninsured motor vehicle coverage. Therefore, "any attempt to contractually or otherwise preclude an insured from receiving the statutorily mandated minimum limits will be unlawful and in direct conflict with Miss.Code Ann. Section 83–11–101(1) (1972), as amended." Memorandum in Opposition at 2. According to Plaintiffs, because Burns only purchased the minimum limits of uninsured motorist bodily injury coverage as set forth by statute, and because Burns paid a separate premium for liability coverage (Coverage AA) for each of the three vehicles insured under the Allstate Policy, Plaintiffs are entitled to stack the three uninsured motorist coverages, each of which must necessarily accompany each liability premium for the three vehicles.

Plaintiffs argue that because the policy provides liability coverage for three vehicles and a separate premium was charged for each such coverage, the policy is not one but three contracts. According to Plaintiffs, because the statutes require a minimum uninsured motorist coverage for each policy or contract, unless rejected in writing by the insured, Allstate is obligated to provide such minimum uninsured motorist coverage for each vehicle provided liability coverage under

the Allstate Policy. The Court does not find this argument persuasive.

The statute governing uninsured motorist coverage provides in relevant part:

> No automobile liability insurance policy or contract shall be issued or delivered ... unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law.... The coverage herein required shall not be applicable where any insured named in the policy shall reject the coverage in writing....

Miss.Code Ann. § 83–11–101(1) (rev. 1991). The Mississippi Motor Vehicle Safety Responsibility Law referenced in the above statute provides as follows:

> [E]very such policy shall be subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and cost, of not less than ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, to a limit of not less than twenty thousand dollars ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident....

Miss.Code Ann. § 63–15–11 (rev.1989).

The Fifth Circuit has recently addressed Mississippi uninsured motorist law, specifically the issue of stacking. *Land*, 78 F.3d at 189–91. Interpreting recent Mississippi case law on the subject, the *Land* court concluded that

> [U]nder Mississippi law, parties; to an insurance contract may still contractually limit the stacking of UM coverages. The language used to limit this liability must be clear and unambiguous, however, ... and, if separate premiums are charged—even in the guise of one lump sum-then the insured is entitled to stack coverage.

*Id.* at 191 (citations omitted). The *Land* court relied on several Mississippi cases

which this Court must now address to clarify the issue raised in this case.

One of the leading cases, *In re Koestler: Casualty Reciprocal Exchange v. Federal Ins. Co.*, 608 So.2d 1258 (Miss.1992), discussed at length Mississippi uninsured motorist law regarding stacking:

> We held early that insurer and insured [are]
>
>> free to contract as to uninsured motorist coverage in any respect so long as the required coverage is not cut down by the policy provisions.
>
> *State Farm Mutual Automobile Insurance Co. v. Talley*, 329 So.2d 52, 54 (Miss.1976) (quoting *Talbot v. State Farm Mutual Automobile Insurance Co.*, 291 So.2d 699, 701 (Miss.1974)). We have repeatedly held
>
>> [a]ny attempt to contractually limit an insurer's duty of coverage ... may not be effective to narrow the requirements of ... [the] statute,
>
> *State Farm Mutual Automobile Insurance Co. v. Nester*, 459 So.2d 787, 789 (Miss.1984). But the act "allows insurers to contract [as they please] with regard to excess coverage." *Wickline v. United States Fidelity & Guaranty Co.*, 530 So.2d 708, 717 (Miss.1988) (quoting *State Farm Mutual Automobile Insurance Company v. Kuehling*, 475 So.2d 1159, 1162 (Miss.1985)). Put another way, there is no public policy against limiting insurance coverages. Over and above the legally mandated minimums, the parties have always remained free to agree as they wish.

*Id.* at 1263. At first glance, the *Koestler* opinion appears to require stacking of at least the minimum statutory amounts of uninsured motorist coverage. Upon closer scrutiny, however, the opinion merely requires that certain minimum coverages be provided to an insured and does *not* require that those minimum coverages must necessarily be stacked.

In a subsequent opinion, the issue of stacking was raised peripherally in the context of the enforceability of a worker's compensation offset clause. *Nationwide Mut. Ins. Co. v.*

*Garriga*, 636 So.2d 658 (1994). The *Land* court explained *Garriga* as follows:

> [T]he Mississippi Supreme Court defined the required statutory minimum amount of UM[5] coverage an insurer must provide as equal to the amount of UM coverage purchased by the insured up to the amount of liability coverage provided in the policy. *Garriga* overruled *Koestler* insofar as *Koestler* had held that the minimum statutorily required UM coverage is that required by Miss.Code Ann. § 63–15–11—or $10,000 per person, $20,000 per accident. *Garriga* held instead "that carriers are commanded by statute to provide coverage up to the amount of liability insurance purchased where the insured so desires and cannot reduce this amount by exception of the type here involved [through the worker's compensation offset provision]".

*Land*, 78 F.3d at 190–91 (citing *Garriga*, 636 So.2d at 665). The *Garriga* court concluded:

> We have previously observed that our uninsured motorist statutes do not permit insurance contracts which would enable the carrier to contract for less than the minimum coverage. Today we squarely address the question, "What is the minimum?" Our answer is that the minimum is that amount of coverage that the insured elects up to the amount of liability coverage purchased.

*Garriga*, 636 So.2d at 659. *Garriga*, however, did not overrule the pronouncement of earlier Mississippi Supreme Court decisions, including *Koestler*, that parties to an insurance contract could limit stacking by using clear and unambiguous language. *See Land*, 78 F.3d at 191.

Finally, in the case for which this matter was stayed, *Harrison*, the Mississippi Supreme Court once again addressed the issue of stacking. The court concluded that the Allstate policy language at issue, which is the same language at issue in this case, clearly precluded the stacking of uninsured motorist benefits. *Harrison*, 662 So.2d at 1094. However, because the declarations page of the policy charged a higher premium for a multi-vehicle policy than for a single-vehicle

---

**5.** "UM" stands for "uninsured motorist."

policy, the court concluded that at least two uninsured motorist coverages could be stacked in that case:

> Although the policy language precluding stacking is clear, we find that Harrison was actually charged separate premiums for his two vehicles under the guise of one lump sum on his declaration sheet. Because the premium for two cars is $24 more than the premium for one car, Allstate clearly charges an additional premium for the second car. We find this case factually similar to *Brown*,[6] the only difference being that Allstate in the present case charged separate uninsured motorist premiums by lumping them together on the declaration sheet. *We do not consider whether a second premium is charged for policies insuring more than two cars as such issue is not presently before us.*

*Id.* at 1094 (emphasis added).

This Court must follow the recent mandate of the Fifth Circuit in *Land* and determine two issues: (1) whether the language of the Allstate Policy is clear and unambiguous regarding stacking; and (2) whether separate premiums have been charged for the uninsured motorist coverage in this case. The answer to the first question must necessarily be yes, and the answer to the second question is a no.

■ Plaintiffs have misread the statute. Although the statute requires certain minimum coverages, the statute does not require that those coverages be stacked. As noted by the Mississippi Supreme Court, "stacking has become a positive gloss upon our Uninsured Motorist Act." *Wickline v. United States Fidelity & Guar. Co.*, 530 So.2d 708, 714 (Miss.1988). Under Mississippi law, stacking is not mandated by statute, but is rather required in cases where an insurance policy is ambiguous concerning whether more than one premium is being charged for more than one uninsured motorist coverage. The Allstate Policy is clear on this issue. The language of Endorsement AU1865–1, as well as the explanatory inserts accompanying that Endorsement, set forth in clear and unambiguous language that stacking will not be permitted under the policy. *See supra* at 1353–1354.

Furthermore, the Allstate Policy charged but a single premium to Burns for multi-vehicle uninsured motorist coverage. The premium is the same regardless of whether 2, 4 or 20 vehicles are being insured. *See Allstate Ins. Co. v. Ashley*, 795 F.Supp. 809, 814 (S.D.Miss.1992), *rev'd on other grounds*, 998 F.2d 300 (5th Cir.1993).[7] Allstate has submitted the affidavit of Jeffrey R. Ill to support its contention that Allstate charges only a single premium for its multi-vehicle uninsured motorist coverage. Ill Aff., attached as Exhibit A to Defendant's Motion.[8] Plaintiffs have offered no evidence to the contrary. Given the undisputed evidence in this case and the fact that Allstate charges the same premium for multi-vehicle uninsured motorist coverage, regardless of the number of vehicles being insured, the Court finds that Allstate has paid all that it is obligated to pay to the Plaintiffs and is therefore entitled to summary judgment.[9]

■ Plaintiffs also assert that they are entitled to punitive damages. However, be-

---

**6.** *See Government Employees Ins. Co. v. Brown*, 446 So.2d 1002 (Miss.1984).

**7.** The Court notes that the *Ashley* district court opinion would have likely been affirmed had the *Harrison* decision been in existence at that time.

**8.** Ill concludes as follows:

> Thus, insuring two or more vehicles under a given policy increases the *frequency* of claims to be expected under that policy. However, insuring multiple vehicles does not affect the average *severity* of losses to be expected (unless stacking is allowed), because *severity* depends only on the applicable Coverage Limits and the extent to which the recoverable damages ex-

ceed the tortfeasors' liability insurance coverage. If stacking is allowed, insuring multiple vehicles under a single policy automatically multiplies the applicable Coverage Limits by the number of vehicles insured and thus increases the average *severity* of the insured losses under that policy.

Ill Aff. at 6, ¶ 15, attached as Exhibit A to Defendant's Motion.

**9.** As noted previously, Allstate has conceded, pursuant to the *Harrison* decision, that Plaintiffs may stack at least two uninsured motorist coverages, even though the premium for multi-vehicle uninsured motorist coverage is less than twice that for single-vehicle uninsured motorist coverage.

cause the issue presented in this case is one of first impression which has not been decided by any state or federal court,[10] the Court finds that Plaintiffs are not entitled to punitive damages. *See Harrison,* 662 So.2d at 1095 (concluding that Allstate paid the plaintiff the "benefits it thought he was entitled to receive and did not engage in malicious conduct").

### IV. *Conclusion*

Allstate charges one premium for single-vehicle uninsured motorist coverage and a higher single premium for multi-vehicle uninsured motorist coverage, regardless of the number of vehicles being covered. Allstate has included in all of its automobile policies, since late 1989, explicit anti-stacking provisions intended to prohibit the stacking of uninsured motorist coverages in a single policy. For these reasons, the Court finds that under the Allstate Policy at issue in this case, the Plaintiffs may not stack a third uninsured motorist coverage as such stacking would be contrary to the explicit language contained in the Allstate Policy and would entitle the Plaintiffs to additional coverage for which no premium has been paid. Because no genuine issues of material fact exist, Allstate is entitled to summary judgment.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Allstate Insurance Company should be and hereby is granted.

A Final Judgment consistent with this Opinion and Order will be entered on this date.

---

**10.** The district court in *Land,* prior to the *Harrison* decision, concluded that uninsured motorist coverages could be stacked because anti-stacking provisions were no longer valid after the *Garriga* decision. *Land v. U.S. Fidelity and Guar. Co.,* 861 F.Supp. 544 (S.D.Miss.1994). Because the Fifth Circuit reversed the district court in Land, the Court is not considering that decision in making the statement that no federal court has ruled on the issue now before the Court.