736 So.2d 384 (1999)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (Subrogee of James E. Penton, Jr.) and James E. Penton, Jr., Appellants,
v.
FORD MOTOR COMPANY and Dearman Ford, Inc., Appellees.
No. 98-CA-00031-COA.
Court of Appeals of Mississippi.
March 9, 1999.
*385 H. Benjamin Mullen, Deidre Lamppin Colson, Pascagoula, Attorneys for Appellants.
Curtis Van Breland, Tylvester Otis Goss, Gregory K. Davis, Jackson, Attorneys for Appellees.
BEFORE THOMAS, P.J., COLEMAN, AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. State Farm Mutual Automobile Insurance Company and James E. Penton, Jr. appeal the circuit court's summary judgment dismissal of their claims against Ford Motor Company, raising the following issues as error:
I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FORD MOTOR COMPANY ON APPELLANTS' STRICT LIABILITY AND NEGLIGENCE THEORIES OF RECOVERY FOR THE DESTRUCTION OF PENTON'S VEHICLE WHICH WAS CAUSED BY A DEFECTIVE REAR SEAL.
II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FORD MOTOR COMPANY REGARDING ITS BREACH OF ITS EXPRESS WARRANTY AGAINST DEFECTIVE FACTORY-SUPPLIED MATERIALS OR WORKMANSHIP.
III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FORD MOTOR COMPANY ON THE ISSUE OF BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY.
¶ 2. We affirm in part and reverse and remand in part.

FACTS
¶ 3. On August 18, 1994, James E. Penton, Jr. purchased a used 1994 Ford Thunderbird from Dearman Ford, Inc. At the time of purchase, the vehicle had approximately 19,250 miles on it. A new vehicle limited warranty was issued covering the 1994 Ford Thunderbird. Penton purchased the car primarily for his wife, although he also drove it.
¶ 4. About a month after purchase, Penton began noticing smoke coming from the vehicle after driving it. Penton assumed the car was leaking oil. Sometime in late September or early October 1994, Penton brought the car into the Dearman Ford for service. He informed the dealership that the car was leaking oil. Penton was told the repair shop was closed, and an appointment was scheduled to effectuate the repairs. Penton's wife later brought the car back to the dealership at the appointed time but was told she did not have an appointment. A new appointment was made for November 3, 1994.
¶ 5. On the morning of the November 3, 1994, Penton was driving the car when he hit "a coon or something in the road." Penton noticed the smell of something burning and pulled the car off the road. When Penton popped the hood he could see fire coming from the engine. The fire eventually engulfed the entire car causing damages in the amount of $16,588. At the time of the fire the vehicle had approximately 23,000 to 25,000 miles on it.
*386 ¶ 6. After paying his $250 deductible, Penton was compensated for his loss by State Farm in the amount of $16,338. State Farm sought recovery of the amount it paid to Penton from Ford Motor Company and Dearman Ford. Penton sought recovery of his $250. The claims of State Farm and Penton were premised on theories of strict liability and negligence in tort, breach of an express warranty[1], and breach of an implied warranty of merchantability.
¶ 7. On February 12, 1997, Ford filed a motion for summary judgment on all claims levied against it. Dearman Ford did not pursue a motion for summary judgment. In its summary judgment motion Ford argued that the claims for strict liability and negligence in tort were prohibited by the economic loss doctrine and Mississippi's products liability statute. Ford further alleged that the claim for breach of an express warranty was barred due to the exclusion in the warranty for damage caused by fire. Finally, it alleged any claim for breach of an implied warranty was barred due to the mileage of the vehicle. A hearing was held taking up the motion on September 18, 1998. The motion was granted dismissing all claims against Ford, and this appeal ensued.

STANDARD OF REVIEW
¶ 8. We conduct a de novo review of the record to determine whether the trial court properly granted a motion for summary judgment. Nationwide Mut. Ins. Co. v. Garriga, 636 So.2d 658, 661 (Miss. 1994); Pace v. Financial Sec. Life, 608 So.2d 1135, 1138 (Miss.1992); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss.1988). The de novo review includes looking at the evidentiary matters and viewing them in the light most favorable to the party against whom the motion has been made. Nationwide Mut. Ins. Co., 636 So.2d at 661. The movant has the burden of proving that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993). "Summary judgment is appropriate if the evidence before the Courtadmissions in the pleadings, answers to interrogatories, depositions, affidavits, etc.shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Rockwell v. Preferred Risk Mutual Ins. Co., 710 So.2d 388, 389 (Miss.1998) (citing Newell v. Hinton, 556 So.2d 1037, 1041 (Miss.1990)).

ANALYSIS

I.
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FORD MOTOR COMPANY ON APPELLANTS' STRICT LIABILITY AND NEGLIGENCE THEORIES OF RECOVERY FOR THE DESTRUCTION OF PENTON'S VEHICLE WHICH WAS CAUSED BY A DEFECTIVE REAR SEAL.
¶ 9. Ford asserts that any claims by State Farm and Penton premised on theories of strict liability and negligence are barred by the economic loss doctrine and Miss.Code Ann. § 11-1-63 (Supp.1998) (product liability actions; conditions for liability; what constitutes defective product). Ford argues that the only damages claimed by State Farm and Penton are economic damages to the product itself, and therefore, under the economic loss doctrine these damages may only be pursued under some type of breach of warranty *387 theory. Although Ford does not cite any Mississippi cases applying this doctrine, it does cite two Mississippi federal court cases East Mississippi Electric Power Association v. Porcelain Products Co., 729 F.Supp. 512 (S.D.Miss.1990) and Lee v. General Motors Corp., 950 F.Supp. 170 (S.D.Miss.1996). Ford further contends that Miss.Code Ann. § 11-1-63 (Supp. 1998) is consistent with this doctrine as it exempts from its coverage actions based upon commercial damage to the product itself.
¶ 10. We are faced with a case of first impression as our supreme court has never addressed the question of applying the economic loss doctrine. Although we are not constrained to follow the precedent of the federal court cases cited, we are certainly at liberty to agree with them. We hold that State Farm and Penton's strict liability and negligence claims are barred under the economic loss doctrine as the only damage sustained was to the product itself.
¶ 11. As the court in East Mississippi noted "[t]he overwhelming majority of courts that have confronted the issue have concluded that a plaintiff who suffers only economic loss as the result of a defective product may have no recovery in strict liability or negligence, though such damage may be pursued under a breach of warranty theory of liability." East Mississippi, 729 F.Supp. at 514. The economic loss doctrine was first espoused in Seely v. White Motor Co., 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965). Id. The doctrine established in Seely was eventually embraced and adopted by the United States Supreme Court in an admiralty decision, East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Id. at 515. Since the United States Supreme Court's decision in East River the majority of jurisdictions have applied and followed the Seely rationale. Lee, 950 F.Supp. at 174.
¶ 12. Seely and its progeny enumerate three basic reasons for not allowing recovery in tort when only economic damages are sought to be recovered. Id. "First, tort law would subsume contract law, secondly the manufacturer's exposure would be too greatly expanded, and thirdly the increased costs to the ultimate consumer would be too great." Id. Allowing recovery in tort under circumstances essentially commercial in nature would not further the purpose of strict liability, a doctrine developed to ensure that the costs of injuries resulting from defective products are borne by the manufacturers who produce such products as opposed to the ultimate consumer. East Mississippi, 729 F.Supp. at 517. Although the economic loss doctrine prohibits recovery in tort for damage to the product itself, that does not mean that consumers who suffer loss or damage to only the product itself are without recourse. Contract law and the law of warranty are well suited to handle controversies in which commercial purchases do not live up to the expectations of the consumer. Id.
¶ 13. The economic loss doctrine is also consistent with Mississippi's products liability statute. Miss.Code Ann. § 11-1-63 (Supp.1998) states in its pertinent part:
In any action for damages caused by a product except for commercial damage to the product itself:

(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
(i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
2. The product was defective because it failed to contain adequate warnings or instructions, or

*388 3. The product was designed in a defective manner, or
4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.
(emphasis added).
¶ 14. Although the act does not define "commercial damage to the product itself," presumably the language means that damages caused by the product that adversely affect the product's monetary value are not within the scope of the act's coverage, and thus, the product owner would have to seek a remedy in the law of warranty or contract. 16 Miss. C.L.Rev. 393, 423 n. 277 (1996).
¶ 15. Turning to the case at bar, State Farm and Penton's argument under this assignment is first that Mississippi has never applied the economic loss doctrine, and second, the defective product in this case was a leaky oil seal which caused oil to spill onto the hot exhaust manifold creating a fire and causing damage to "other property," namely the car, to which the economic loss doctrine does not bar recovery. The answer to the first argument is that we simply have yet to reach this issue before. As to appellants' second argument even if we were to take as true that the seal was defective that does not mean the rest of the car should be considered "other property" to which the resulting damage could be recoverable under theories of tort. We are unconvinced by any type of characterization of the remainder of the car as "other property." An oil seal is an integral component part of a car. "Component parts are not `other property.'" Virginia Transformer Corp. v. P.D. George Co., 932 F.Supp. 156, 162 (W.D.Va. 1996) (citing East River, 476 U.S. at 867, 106 S.Ct. 2295).
¶ 16. There is no genuine issue as to any material fact as appellants suffered only economic loss to the car itself. The economic loss doctrine bars recovery for such loss under theories of tort. Ford is entitled to a judgment as a matter of law on appellants' claims for strict liability and negligence.

II.
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FORD MOTOR COMPANY REGARDING ITS BREACH OF ITS EXPRESS WARRANTY AGAINST DEFECTIVE FACTORY-SUPPLIED MATERIALS OR WORKMANSHIP.
¶ 17. Ford issued a new vehicle limited warranty covering Penton's 1994 Ford Thunderbird. The limited warranty covered the following:
What is Covered
Bumper to Bumper Warranty
The complete vehicle (except tires) is covered against defects in factory-supplied materials or workmanship for three years or 36,000 miles, whichever occurs first. Damage and other items that are not covered by your new vehicle limited warranty are described on pages 11-12.
The limited warranty excluded the following from coverage:
What is Not Covered
Alteration, Misuse, or Damage Caused by Accident
Examples are:
Collision, fire, theft, freezing, vandalism, riot, explosion, or objects striking the vehicle
Misusing the vehicle, such as driving over curbs, overloading, racing, or using the vehicle as a stationary power source

*389 Alteration or modification of the vehicle, including the body, chassis, or components after the vehicle leaves the control of Ford
Tampering with the vehicle, tampering with the emissions systems or with other parts that affect these systems
Disconnecting or altering the odometer, or where the actual mileage cannot be determined due to the odometer being inoperative for an extended period of time
Contaminated or improper fuel/fluids Customer-applied chemicals
¶ 18. Ford's basic argument under this assignment is two fold. First, it argues the warranty is clear and unambiguous, and therefore, the parties are bound by the terms of the warranty agreement which exclude coverage for this type of incident, specifically an unexplained fire. Ford relies on the language in the warranty under "what is not covered" to exclude coverage in this instance. Second, it argues Penton failed to satisfy his burden of proving that the manufacturer failed to repair his vehicle pursuant to the warranty. Ford contends that the record shows that Dearman Ford told Penton to make an appointment to have his vehicle serviced and that the dealer was willing to repair the vehicle. However, Penton drove the vehicle for a month or two after noticing the vehicle was leaking oil and, therefore, Penton's misuse of the vehicle was the cause of the fire, not any act on the part of Ford.
¶ 19. We hold that a jury question exists as to whether the terms of the limited warranty exclude subsequent damage due to an alleged defective part or design. State Farm and Penton allege that the resulting fire was caused by either defective design, manufacture, or negligent inspection on part of Ford. A reading of the warranty appears to show that fire damage is excluded if it results from "alteration, misuse, or accident" but is not necessarily excluded if it results from, for example, a defective part or a failure to diagnose or repair following a warranty-covered service request. A genuine issue exists as to whether Ford is responsible for repair or replacement of the entire vehicle caused by the alleged defect. The express warranty is susceptible to an interpretation which could include coverage for this type of damage. But such an interpretation is for the jury to decide.
¶ 20. Furthermore, a jury question exists as to whether Dearman Ford, who acted for Ford under the warranty, properly attended to Penton's car when he brought it in for service. Penton twice had his car brought to Dearman Ford, only to be turned away each time. After being turned away twice, Penton was scheduled for service at the dealership the day of the fire. Whether Dearman Ford on behalf of Ford promptly and with due diligence ministered to a problem which allegedly caused a fire and total destruction of the car is a question for the jury. If Ford failed to make repairs and replace damaged parts as required under the express warranty it cannot limit its damages to those specifically provided in the express warranty. Ford Motor Co. v. Fairley, 398 So.2d 216, 219 (Miss.1981).
¶ 21. Since a jury question exists as to whether Ford properly carried out its duties under the express warranty, a genuine issue of material fact exists precluding summary judgment in this instance.

III.
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FORD MOTOR COMPANY ON THE ISSUE OF BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY.
¶ 22. At the time Penton purchased the Ford Thunderbird it had approximately 19,250 miles on it. At the time the Ford Thunderbird was destroyed it had approximately 24,000 miles on it. Ford argues *390 that since the vehicle was driven more than 24,000 miles the vehicle was of merchantable quality. Furthermore, Ford contends based on the mileage and length of service the car was fit for the purpose for which it was manufactured. Ford relies on Ford Motor Co. v. Fairley, 398 So.2d at 219, for the proposition that service of more than two years and 26,000 miles as a matter of law negates a breach of an implied warranty of merchantability.
¶ 23. The implied warranty of merchantability is codified in Miss.Code Ann. § 75-2-314 (Supp.1998), which reads in part:
(1) Except as provided in subsection (5), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind....
(2) Goods to be merchantable must be at least such as:
. . . .
(c) Are fit for the ordinary purposes for which such goods are used....
¶ 24. The implied warranty of merchantability cannot be waived or disclaimed. Miss Code Ann. § 11-7-18 (Supp.1998). Moreover, our case law clearly holds that the implied warranty of merchantability applies to the sale of used vehicles. Gast v. Rogers-Dingus Chevrolet, 585 So.2d 725, 728 (Miss.1991).
¶ 25. Ford's reliance on Ford Motor Co. v. Fairley is misplaced. In that case the purchaser owned the car in question for more than two years and had driven it over 21,000 miles before experiencing any problems with it. Ford Motor Co. 398 So.2d at 217. Under these circumstances and length of service our supreme court held that the implied warranty of merchantability was negated. Id. at 219. In the case at hand, Penton purchased the car on August 18, 1994, and in his deposition he stated that the car started leaking oil a month after purchase. Penton attempted to bring his car to the dealership about a month before the fire on November 3, 1994. At the time of the fire, Penton had only driven the car some 5,000 miles since purchase. Even though used and with 24,000 miles on it when Ford sold the Thunderbird, Penton was entitled to a vehicle in good working order and fit for the ordinary purposes for which it was to be used. Clearly the implied warranty of merchantability still applied to the car. Since the implied warranty of merchantability was still applicable, a genuine issue of material fact exists as to whether Ford breached this warranty. As such Ford is not entitled to summary judgment on this issue.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF PERRY COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE TO BE ASSESSED EQUALLY BETWEEN THE APPELLANTS AND APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
NOTES
[1] State Farm and Penton's complaint against Ford does not allege any breach of express warranty. Although not expressly pled, Ford nonetheless at trial addressed express warranty claims in its motion for summary judgement to which State Farm and Penton responded. Again on appeal, both parties have addressed express warranty claims. Ford has not raised any type of objection to the express warranty claims. Such action results in the express warranty claims being tried by consent under M.R.C.P. 15(b).