966 So.2d 901 (2007)
Roger MURRAY d/b/a Twin River Auto Sales, Appellant,
v.
Tammy BLACKWELL, Appellee.
No. 2006-CA-01373-COA.
Court of Appeals of Mississippi.
October 16, 2007.
David S. Van Every, Columbus, attorney for appellant.
William L. Bambach, Columbus, attorney for appellee.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. This case involves a Lowndes County contract dispute arising from the "as is" sale of a used automobile. The buyer sued the seller in county court for breach of the implied warranties of merchantability and fitness for a particular purpose. The Circuit Court of Lowndes County affirmed the county court's judgment in favor of the buyer finding that the implied warranties may not be waived. The seller appeals to this Court and asserts that the trial court erred in finding that the buyer did not waive the implied warranties by executing a notice of exclusion or modification of implied warranty pursuant to Mississippi Code Annotated section 75-2-315.1(3)(a) *902 (Rev.2002). We find error and reverse and remand for a new trial.

FACTS
¶ 2. On March 24, 1999, Tammy Blackwell purchased for $4,625 a 1989 Mazda 626 from Roger Murray d/b/a Twin River Auto Sales in Columbus, Mississippi. According to Mr. Murray, the vehicle had been driven approximately 140,000 miles when he sold it to Ms. Blackwell. At the time of purchase, Ms. Blackwell signed a notice of exclusion or modification of implied warranty ("as is" agreement).[1] The "as is" agreement executed by the parties stated in part as follows:
UNDER MISSISSIPPI LAW, CONSUMERS ARE ENTITLED TO AN IMPLIED WARRANTY, WHICH MEANS THAT THE DEALER MAY BE RESPONSIBLE FOR MAKING REPAIRS TO DEFECTIVE VEHICLE EQUIPMENT THAT PRESENTLY EXISTS OR MAY OCCUR IN THE FUTURE. IF A MOTOR VEHICLE, IS OVER 6 MODEL YEARS OLD OR HAS BEEN DRIVEN MORE THAT 75,000 MILES, THIS IMPLIED WARRANTY MAY BE MODIFIED.
. . . .
AS PROVIDED IN SECTION 75-2-315.1, MISSISSIPPI CODE OF 1972, ANNOTATED, THIS IS TO GIVE NOTICE THAT ALL WARRANTIES, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE INTENDED, COVERING THE VEHICLE IDENTIFIED BELOW, ARE HEREBY EXCLUDED OR MODIFIED AS FOLLOWS:
 PLEASE CHECK ONE:
 [] [checked] Vehicle sold As Is [] 30-Day Warranty  Dealer Pays ____%
 [] Other (explain) ______________________________________________
¶ 3. Ms. Blackwell took possession of the car and made monthly payments to Mr. Murray until the car was paid in full on July 10, 2000. Beyond these facts, the circumstances surrounding the sale are in dispute.
¶ 4. Ms. Blackwell testified at trial that she noticed the 1989 vehicle "had a bad thump to it." Her testimony is unclear as to when she noticed the thump. At one point she testified that she noticed the thump several days after she took possession of the car. Ms. Blackwell stated that she returned to Twin River Auto Sales to complain, whereupon Mr. Murray told her that he previously had the transmission worked on at Best Transmission and suggested that she take the car to Best Transmission for further repair since he had already paid them to repair the transmission.[2] Ms. Blackwell testified that she *903 took the car to Best Transmission for repairs and left it for a week or two. She stated that the thumping continued after she picked the car up and that she complained of the persistent problem each month when she went to Twin River Auto Sales to pay Mr. Murray.
¶ 5. Mr. Murray testified that Ms. Blackwell never complained that there was anything wrong with the car. He maintained that he never told Ms. Blackwell to take the car to Best Transmission for repairs or made any repairs to the car himself. Ms. Blackwell's mother also testified and stated that she went to Mr. Murray's with her daughter to make payments on the vehicle and that neither she nor Ms. Blackwell ever mentioned any problems with the car after its alleged service at Best Transmission.
¶ 6. Ms. Blackwell used the car until June 2001 when she took the car to Cottman's Transmission for repairs. Apparently, Ms. Blackwell was unable to pay for these services. The car was abandoned at Cottman's on or about June 21, 2001, and eventually sold to satisfy a mechanic's lien.[3]
¶ 7. On February 15, 2002, Ms. Blackwell filed suit against Mr. Murray in county court for breach of the implied warranties of merchantability and fitness for a particular purpose. The county court entered a judgment in favor of Ms. Blackwell which found simply that Ms. Blackwell was entitled to a judgment against Mr. Murray in the amount of $4,900 plus all costs and post-judgment interest at the rate of eight percent until paid in full. Mr. Murray then appealed to the Lowndes County Circuit Court. In affirming the county court's judgment, the circuit court found that the implied warranties of merchantability and fitness for a particular purpose may not be waived.

STANDARD OF REVIEW
¶ 8. "The county court was the fact finder, and the circuit court, as well as this Court, are bound by the judgment of the county court if supported by substantial evidence and not manifestly wrong." Patel v. Telerent Leasing Corp., 574 So.2d 3, 6 (Miss.1990) (citations omitted).

DISCUSSION
I. Whether the trial court erred in finding that the implied warranties of merchantability and fitness for a particular purpose may not be waived in the sale of a late-model used vehicle?
¶ 9. Mr. Murray asserts that Ms. Blackwell effectively waived the implied warranties of merchantability and fitness for a particular purpose by executing the notice of exclusion or modification of implied warranty pursuant to Mississippi Code Annotated section 75-2-315.1(3)(a) (Rev.2002). We agree.
¶ 10. Mississippi law recognizes two implied warranties in contracts for the sale of goods: the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. The implied warranty of merchantability arises under Mississippi Code Annotated section 75-2-314, which states in part that: "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Miss.Code Ann. § 75-2-314(1) (Rev.2002). The implied warranty *904 of fitness for a particular purpose arises under Mississippi Code Annotated section 75-2-315, which provides in part that: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose."
¶ 11. As a general rule, these implied warranties may not be waived or disclaimed. In this regard, Mississippi Code Annotated section 11-7-18 (Rev. 2004) provides in part: "Except as otherwise provided in Sections 75-2-314, 75-2-315, 75-2-315.1 and 75-2-719, there shall be no limitation of remedies or disclaimer of liability as to any implied warranty of merchantability or fitness for a particular purpose." Similarly, Mississippi Code Annotated section 75-2-719(4) (Rev.2002) provides in part: "Any limitation of remedies which would deprive the buyer of a remedy to which he may be entitled for breach of an implied warranty of merchantability or fitness for a particular purpose shall be prohibited."
¶ 12. Prior Mississippi cases interpreting these statutes in the context of a used car sale have held that the implied warranties of merchantability and fitness for a particular purpose apply to the sale of used vehicles and may not be waived or disclaimed. See Gast v. Rogers-Dingus Chevrolet, 585 So.2d 725, 728 (Miss.1991) (citing Beck Enterprises, Inc. v. Hester, 512 So.2d 672, 676 (Miss.1987)); Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So.2d 324, 327 (Miss.1988); State Farm Mut. Auto. Ins. Co. v. Ford Motor Co., 736 So.2d 384, 390(¶ 24) (Miss.Ct.App. 1999). However, none of the above-cited cases considered the permissible disclaimer of implied warranties under section 75-2-315.1(3)(a).[4] Therefore, this issue appears to be one of first impression in Mississippi.
¶ 13. In the instant case, we are mindful of seemingly well-established Mississippi precedent which holds that the implied warranties may not be waived or disclaimed in a contract for the sale of a used motor vehicle. However, we have no difficulty finding that Ms. Blackwell effectively waived the implied warranties by executing the "as is" agreement as contemplated *905 by section 75-2-315.1(3)(a) despite the general rule against disclaimer of implied warranties. Section 75-2-315.1 is specifically excepted from the non-disclaimer statute, section 11-7-18. See above. This fact, together with a plain reading of section 75-2-315.1 itself, makes abundantly clear that the legislature intended to permit the disclaimer of implied warranties in contracts for the sale of late-model used vehicles.
¶ 14. The execution of the "as is" agreement in the instant case complied with section 75-2-315.1 in all respects. The Mazda 626 was over six-years-old at the time of sale and thus subject to disclaimer of implied warranties under section 75-2-315.1(3)(a)(ii). The exclusion that was on the form proscribed by the Attorney General, in writing, mentioned merchantability and was conspicuous. Moreover, Ms. Blackwell testified that she signed and understood the "as is" agreement and its consequences. We, therefore, hold that the trial judge erred in finding that the implied warranties were not waived or disclaimed.
2. Express Warranty
¶ 15. The remaining inquiry in this case involves the effect of Mr. Murray's alleged words or conduct regarding the repair of the vehicle subsequent to the sale. To this end, Ms. Blackwell claims that Mr. Murray made an additional express warranty to repair the thumping sound and, thereafter, breached this express warranty by failing to repair the defect.[5]
¶ 16. Mr. Murray argues that, after Ms. Blackwell picked the vehicle up from Best Transmission, she failed to reject the vehicle under section 75-2-602 or to revoke her acceptance of the vehicle within a reasonable time under section 75-2-607. In support of this argument, Mr. Murray argues that Ms. Blackwell continued to use the vehicle for over two years after she picked the vehicle up from Best Transmission. Mr. Murray specifically points out that, during the two years of use, Ms. Blackwell bought new tires for the vehicle and pledged the vehicle's title as collateral for a loan. Accordingly, Mr. Murray argues that Ms. Blackwell's damages, if any, are limited to "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. . . ." Miss.Code Ann. § 75-2-714(2).
¶ 17. The trial court made no finding on these issues and the opinion of the circuit court addressed only the issue of waiver of implied warranties. We also note that the trial judge made no findings as to how the amount of damages was calculated and did not specify under which provision(s) of the uniform commercial code damages were awarded. As we are without a sufficient basis to review these issues, we reverse and remand for a new trial to consider the effect of Mr. Murray's alleged statements concerning the repair of the vehicle and of Ms. Blackwell's continued use of the vehicle.
¶ 18. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] This document, commonly referred to as an "as is" agreement, is a form document made available to used car dealers by the Attorney General of the State of Mississippi pursuant to Mississippi Code Annotated section 75-2-315.1.
[2] Ms. Blackwell testified as follows:

Mr. Murray had told me that he had already had a transmission done to the car which other people that noticed the bad thump in that car, they told me it was the transmission. I went to Mr. Murray and I told him also. He said well, I just got a transmission put in that car, so take it to Best Transmission who I had the people that was repairing this transmission and they will help you, you know, because I paid  I mean, that's the only thing he kept telling me: I paid them. I paid them.
[3] Ms. Blackwell returned to Cottman's at some point to settle the matter of payment and discovered that the garage had changed ownership and was now Gene's Transmission. Ms. Blackwell later found out that Gene's Transmission was owned and operated by the same person that owned Best Transmission and "didn't feel that [she] should have to pay any extra money for a car that was supposed to have been fixed at first by Best Transmission."
[4] Section 75-2-315.1 provides in pertinent part:

(1) Any oral or written language used by a seller of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties, is unenforceable. However, the seller may recover from the manufacturer any damages resulting from breach of the implied warranty of merchantability or fitness for a particular purpose.
(2) Any oral or written language used by a manufacturer of consumer goods, which attempts to limit or modify a consumer's remedies for breach of the manufacturer's express warranties, is unenforceable.
(3)(a) The provisions of this section do not apply to a motor vehicle:
(i) Required to be titled under state law;
(ii) That is over six (6) model years old or that has been driven more than seventy-five thousand (75,000) miles; and
(iii) If, at the time of sale of the motor vehicle, the seller gives the purchaser notice of the inapplicability of this section on the form prescribed by the State Attorney General.
(b)(i) An exclusion or modification of an implied warranty of merchantability, or any part of a warranty under this subsection shall be in writing, mention merchantability, and be conspicuous.
(ii) An exclusion or modification of the implied warranty of fitness shall be in writing and conspicuous.
(iii) Any exclusion or modification of either warranty shall be separately acknowledged by the signature of the buyer.
[5] The contract of sale contained a merger clause which would ordinarily preclude oral testimony seeking to vary the terms of the written agreement. However, no objection was made to the testimony of Mr. Murray's alleged statements.